IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ANTHONY JAMES COWART, *
*
Plaintiff, *
*
vs. * Civil Action No. 2:07cv456-MHT
*
E-TEAM OFFICER C. SMITH; *
SHERIFF D. T. MARSHALL; *
DIRECTOR GINA M. SAVAGE; *
And ASSISTANT DIRECTOR WANDA *
ROBINSON, *
*
Defendants.

**SPECIAL REPORT**

COMES NOW, Defendants E-Team Officer C. Smith, Sheriff D. T. Marshall, Director Gina M. Savage, and Assistant Director Wanda Robinson, by and through their attorney, Thomas T. Gallion, III and the law firm of Haskell Slaughter Young & Gallion, LLC and in response to this Honorable Court's Order dated April 26, 2007 submits the following Special Report to this Court.

**DOCUMENTS**

Affidavit of D.T. Marshall

Affidavit of Gina M. Savage

Affidavit of Cassandra Smith

Affidavit of Wanda J. Robinson

Incident Report dated 02-28-06

Use of Force Report (three)

Medical Notes

Handbook on Inmate Rules and Regulations

**PLAINTIFF'S ALLEGATIONS**

Plaintiff alleges that on February 28, 2006, he was shot with a taser gun by Officer C. Smith in the left side of his face and left top part of his head seconds after Officer Kendricks shot him with a taser gun in his back. Plaintiff alleges that Officer Smith claimed she was pointing for the Plaintiff's chest but that she was standing to the left of him and he was already falling to the floor from the taser shot in his back. Plaintiff states that he was taken to the emergency room to have the tazer prongs removed. Plaintiff states that he got into an altercation with Officers Smith, Kendricks, and Franklin when he was told that his one hour out of his isolated cell was up and he needed to return to his cell so that they could escort another inmate into the 4th Floor isolation area, when in fact he had not been out of his cell for his full hour.

**FACTS**

1. Plaintiff Cowart was incarcerated on October 20, 2004, charged with robbery and capital murder. On February 28, 2006, Plaintiff Cowart was still a pre-trial detainee. (See Affidavit of Gina Savage.)

2. It is the policy of the Montgomery County Detention Facility that every effort will be made on the part of facility personnel to ensure safe custody, decent living conditions, and fair treatment of all inmates. (See Affidavit of Sheriff D. T. Marshall.)

3. On February 28, 2006, Plaintiff was using the telephone in the dayroom. When told by an officer that it was time for him to return to his cell, he refused and continued his conversation. Corporal Donald Williams gave him a direct order to return to his cell. Plaintiff was overheard stating to the party on the telephone, "let me get off

this phone before I do something to one of these officers." After hanging up the telephone, he threatened to do bodily harm to Corporal Williams. He was given several direct orders to return to his cell. He refused to obey, turned back toward Corporal Williams and continued making verbal threats and using aggressive body gestures by raising his closed fist in a fighting manner. (See Affidavit of Gina Savage, Affidavit of Cassandra Smith, Affidavit of Wanda J. Robinson, 02-28-06 Incident Report, and the three Use of Force Reports.)

4.    Corporal Williams withdrew his chemical irritant but did not use it at that point. Inmate Cowart lowered his fists but continued making verbal threats. When he raised his fist again in an aggressive manner, Corporal Williams sprayed him with his chemical irritant but it had no effect. Inmate Cowart swung around making a sudden motion toward Corporal Williams. Officer Kendrick, positioned to the right of Corporal Williams, deployed her taser. Because the cartridge was bad, the prongs struck Inmate Cowart's jumpsuit and had no effect. Inmate Cowart continued to move toward Corporal Williams, bending down to avoid a direct hit from the taser. Officer Smith, positioned at ready gun to the right of Officer Kendrick, deployed her taser twice striking Inmate Cowart's head. When Officer Smith deployed her taser, she was aiming at center mass but because Inmate Cowart was bobbing and weaving, the probes struck towards the front of his head and in his head. He was immediately immobilized and restrained. (See Affidavit of Gina Savage, Affidavit of Cassandra Smith, Affidavit of Wanda J. Robinson, 02-28-06 Incident Report, and the three Use of Force Reports.)

5.    The in-house medical unit was summoned and Nurse Hill checked Inmate Cowart without comment or suggestions. Inmate Cowart was relocated to Booking and

Lieutenant Crenshaw called Major Robinson and informed her of the situation. Major Robinson ordered that an on-duty nurse attempt to remove the prongs; but the nurse was unsuccessful. Major Robinson then ordered that the inmate be transported to the medical facility. Plaintiff was transported to Baptist South Emergency Room and the prongs were successfully removed and he was returned to the detention facility the same day without incident. Plaintiff's sutures were removed on March 8, 2006 and he was monitored again by the medical staff on March 16, 2006. (See Affidavit of Gina Savage, Affidavit of Wanda J. Robinson, the three Use of Force Reports, 02-28-06 Incident Report, and Medical Notes).

6. Inmate Cowart was charged with the following violations: A-1 acting insolent toward personnel; A-3 using abusive language; B-6 failing to comply with an officer's lawful order; B-16 violating rules or regulations; C-17 acting in a way that disrupts or interferes with security or orderly running of facility and C-22 attempting to intimidate or actually intimidating/ controlling personnel through coercion, force or threat. (See 02-28-07 Incident Report and Handbook on Inmate Rules and Regulations.)

**DEFENSES**

1. The Complaint fails to state a claim upon which relief can be granted.

2. Defendants did not violate any of the Plaintiff's constitutional rights afforded him under law.

3. Plaintiff failed to exhaust his administrative remedies by taking advantage of the inmate grievance system in place at the Montgomery County Detention Facility. Plaintiff's claims should therefore be dismissed. *Alexander v. Hawk*, 159 F. 3rd 1321 (11th Cir. 1998).

4. Defendants aver that they acted in a manner that has been in accordance with previous court rulings regarding the operation of the Montgomery County Detention Facility.

5. Defendants aver that the prison regulations in question were reasonably related to legitimate penological interests.

6. Defendant Marshall avers that he is entitled to immunity pursuant to the Eleventh Amendment to the United States Constitution and/or qualified immunity from suit.

7. To the extent Plaintiff asserts his claims against Defendants Marshall and Savage in their official capacities, these claims should be dismissed. Plaintiff's claims for damages against Defendants Marshall and Savage in their official capacities under 42 U.S.C. § 1983 should be dismissed because in their official capacities, Defendant Marshall and Defendant Savage are not considered "persons" subject to liability under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Any such official capacity claims must also be dismissed because Defendants Marshall and Savage are entitled to immunity under the Eleventh Amendment to the United States Constitution. *Lancaster v. Monroe County*, 16 F. 3rd 1419 (11th Cir. 1997).

8. To the extent Plaintiff has asserted his claims against Defendants Marshall and Savage in their individual capacity, they is entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzales v. Lee County Housing Authority*, 161

F.3[rd] 1290, 1295 (11th Cir. 1998). Defendant Marshall and Defendant Savage were acting within the scope of their discretionary authority, and the burden is therefore on the Plaintiff to demonstrate that these Defendants' actions rise to a constitutional violation, and that Defendant Marshall and Defendant Savage violated clearly established law. *Hope v. Pelzer*, 536 U.S. 730 (2002). "the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The applicable law "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In determining whether the unlawfulness of an official's actions was clearly established, "the salient question . . . is whether the state of the law [at the time of the unconstitutional act] gave [the official] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003) *quoting Hope*, 536 U.S. at 741. Plaintiff cannot meet this burden; therefore, his claims should be dismissed.

9. Plaintiff must also establish a casual connection between an act of a supervising official and the alleged constitutional violation. *Smith v. State of Alabama*, 996 F. Supp. 1203, 1212 (M.D. Ala. 1998). Defendant Marshall and Defendant Savage are supervisory officials. Plaintiff has failed to establish a casual connection between any of Defendants Marshall and Savage's actions and any alleged constitutional violation. Plaintiff's claims against Defendants Marshall and Savage should therefore be dismissed.

**MEMORANDUM IN LAW**

The Plaintiff's claims do not rise to a constitutional violation. The Plaintiff cannot demonstrate that the conditions at the facility are sufficiently serious or that Defendants were deliberately indifferent to his health or safety.

Grievance procedures are available to inmates to address living conditions at the Montgomery County Detention Facility. Plaintiff failed to file any grievance regarding any of his claims in the Complaint. Plaintiff therefore failed to exhaust available administrative remedies, and his claims should therefore be dismissed. *Alexander v. Hawk,* 159 F. 3rd 1321 (11th Cir. 1998).

Plaintiff must also establish a casual connection between an act of a supervising official and the alleged constitutional violation. *Smith v. State of Alabama*, 996 F. Supp. 1203, 1212 (M.D. Ala. 1998). Defendant Marshall and Defendant Savage are supervisory officials. Plaintiff has failed to establish a casual connection between any of his actions and any alleged constitutional violation. Plaintiff's claims against Defendant Marshall and Defendant Savage should therefore be dismissed.

There is no evidence that Defendants had a subjective awareness of a relevant risk of serious harm to the Plaintiff, and that they disregarded that risk. The prison regulations in place at the Montgomery County Detention Facility are reasonable and do not infringe the Plaintiff's constitutional rights. *Turner v Safley*, 482 U.S. 78 (1997).

Defendants submit again that Plaintiff has failed to exhaust any applicable grievance procedure with respect to this claim. Defendants therefore respectfully

requests that this Court dismiss the Plaintiff's claims and for any other relief to which they may be entitled.

Respectfully submitted this 9th day of July 2007.

s/ Thomas T. Gallion, III______________
Thomas T. Gallion, III (GAL010)
Attorney for Defendants
ASB-5295-L74T
E-mail: mp@hsy.com

OF COUNSEL:
Haskell Slaughter Young & Gallion, LLC
305 South Lawrence Street
Post Office Box 4660
Montgomery, Alabama 36103-4660
(334) 265-8573
fax number: (334) 264-7945

CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following parties or counsel and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Anthony Cowart #7889
Montgomery County Detention Facility
Post Office Box 4599
Montgomery, Alabama 36103

s/ Thomas T. Gallion, III______________
Of Counsel

50051-603
#26,844

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY JAMES COWART** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:07-CV-456-MHT** |
| | ) | |
| **E-TEAM OFFICER C. SMITH, et al** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF D. T. MARSHALL

Before me, a Notary Public, personally appeared D. T. Marshall and after being duly sworn, did say as follows

1. My name is D. T. Marshall and I am Sheriff of Montgomery County, Alabama.

2. I have not violated the constitutional rights of Inmate Anthony James Cowart.

3. It is the policy of the Montgomery County Detention Facility that every effort will be made on the part of facility personnel to ensure safe custody, decent living conditions, and fair treatment for all inmates.

4. The total, daily operations of the jail are managed by the Director of the Detention Facility, employed by the Montgomery County Sheriff's Office.

D T Marshall
D. T. Marshall

Sworn to and subscribed before me this 8th day of June, 2007.

Notary Public
My Commission Expires September 13, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

**ANTHONY JAMES COWART** )
)
**Plaintiff,** )
)
**v.** ) **CIVIL ACTION NO. 2:07-CV-456-MHT**
)
**E-TEAM OFFICER C. SMITH, et al** )
)
**Defendants.** )

**AFFIDAVIT OF GINA M. SAVAGE**

Before me, a Notary Public, personally appeared Gina M. Savage and after being duly sworn, did say as follows

1. My name is Gina Savage. I am Director of the Montgomery County Sheriff's Office Detention Facility.

2. I have not violated the constitutional rights of Inmate Anthony James Cowart.

3. Anthony James Cowart was incarcerated October 20, 2004, charged with Robbery and Capital Murder.

4. On February 28, 2006, Inmate Cowart, a pre-trial detainee, was using the telephone in the dayroom. When told that it was time for him to return to his cell, he refused and continued his conversation. Corporal Donald Williams gave him a direct order to return to his cell; he stated to the party on the phone "let me get off this phone before I do something to one of these officers". After hanging up the phone he threatened to do bodily harm to Corporal Williams. He was given several direct orders to return to his cell. He refused to obey, turned back toward

Corporal Williams and continued making verbal threats and using aggressive body gestures by raising his closed fist in a fighting manner.

Corporal Williams withdrew his chemical irritant but did not use it at that point. Inmate Cowart lowered his fists but continued making verbal threats. When he raised his fists in an aggressive manner again, Corporal Williams sprayed him with his chemical irritant but it had no effect. Inmate Cowart swung around making a sudden motion toward Corporal Williams. Officer Kendrick, positioned to the right of Corporal Williams, deployed her taser. Because the cartridge was bad, the prongs struck Inmate Cowart's jumpsuit and had no effect. Inmate Cowart continued to move toward Corporal Williams, bending down to avoid a direct hit from the taser. Officer Smith, positioned at ready gun to the right of Officer Kendrick, deployed her taser striking Inmate Cowart's head. He was immediately immobilized and restrained. Medical was summoned and Nurse Hill checked Inmate Cowart without comment or suggestions. Inmate Cowart was relocated to Booking and Lieutenant Crenshaw called Major Robinson and informed her of the situation.

Major Robinson ordered that an on-duty nurse attempt to remove the prongs. Nurse Hill attempted to remove the prongs but determined they were too deeply embedded. Major Robinson then ordered that Inmate Cowart be transported to a medical facility to have the prongs removed. Lieutenant Persky, Montgomery County Sheriff's Office, observed Inmate Cowart and concurred. Two deputies arrived at the detention facility and transported Inmate Cowart to Baptist South ER where the prongs were successfully removed and he was returned to the detention facility the same day without incident.

Gina M. Savage

Sworn to and subscribed before me this 11 day of June, 2007.

[signature]
Notary Public
My Commission Expires September 13, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY JAMES COWART** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:07-CV-456-MHT** |
| | ) | |
| **E-TEAM OFFICER C. SMITH, et al** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF CASSANDRA SMITH**

Before me, a Notary Public, personally appeared Cassandra Smith and after being duly sworn, did say as follows.

1. My name is Cassandra Smith. I am employed as a Corrections Officer with the Montgomery County Sheriff's Office Detention Facility, assigned to the E-Team.

2. I have not violated the constitutional rights of Inmate Anthony James Cowart.

3. On February 28, 2006, Sergeant Garner, Corporal Williams, Officer Franklin, E-Team Member Officer Kendrick and I were in 4-Isolation to relocate Inmate Dennis Woodall. We secured Inmate Woodall and I informed Corporal Williams that it was time for Inmate Anthony Cowart, who was in the dayroom talking on the phone, to go back to his cell. Corporal Williams, in a very professional way, told Inmate Cowart to hang up the phone; that it was time for him to return to his cell. Inmate Cowart stated that he was talking to his children's mother because one of the children was sick. He continued with his conversation. Corporal Williams again told Inmate Cowart that it was time for him to get off the phone and to lockdown. Inmate

Cowart stated to the person he was talking to "let me get off this phone before I do something to one of these officers".

At that time Inmate Cowart hung up the phone and began making threats to bodily harm Corporal Williams. Officer Franklin attempted to get Inmate Cowart to go to his cell to no avail. Inmate Cowart, still displaying disruptive behavior, turned toward Corporal Williams and continued making all kinds of threats against him, using aggressive body jesters – even going so far as to make a closed fist as if he were ready to fight.

Corporal Williams pulled his chemical irritant and pointed it toward Inmate Cowart, but did not use it. Inmate Cowart continued making verbal threats and made a closed fist again. At that time Corporal Williams deployed his chemical irritant striking Inmate Cowart's face. Inmate Cowart made a sudden motion swinging around toward Corporal Williams. At that time Officer Kendrick deployed her taser with the probes striking the back of Inmate Cowart's jumpsuit having no effect on him. Inmate Cowart was bobbing and weaving and I, at gun ready, deployed my taser aiming at center mass. I did not intend for the taser to strike Inmate Cowart anywhere except center mass but because he was bobbing and weaving the probes struck towards the front of his head and were stuck in his Afro.

Cassandra P. Smith
Cassandra Smith

Sworn to and subscribed before me this 14 day of June, 2007.

Lena (Hines) Cates
Notary Public
My Commission Expires September 13, 2010

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ANTHONY JAMES COWART** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:07-CV-456-MHT** |
| | ) | |
| **E-TEAM OFFICER C. SMITH, et al** | ) | |
| | ) | |
| **Defendants.** | ) | |

**AFFIDAVIT OF WANDA J. ROBINSON**

Before me, a Notary Public, personally appeared Wanda J. Robinson and after being duly sworn, did say as follows

1. My name is Wanda Robinson. I am Assistant Director of the Montgomery County Sheriff's Office Detention Facility.

2. I have not violated the constitutional rights of Inmate Anthony James Cowart.

3. Anthony James Cowart was incarcerated October 20, 2004, charged with Robbery and Capital Murder.

4. On February 28, 2006, Inmate Cowart was using the telephone in the dayroom. When officers told him to go back to his cell, that his time out for the day was over, he refused. He was given a direct order by Corporal Donald Williams to hang up the phone and return to his cell. He did hang up the phone but refused several direct orders to return to his cell. He continued to be verbally abusive and became combative toward Corporal Williams, threatening him with bodily harm. When he raised his fist in an aggressive act, Corporal Williams sprayed him with his

chemical irritant; however the spray had no effect. When Inmate Cowart swung around toward Corporal Williams, E-Team Officer Jackie Kendrick, who was stationed to the right of Corporal Williams, deployed her taser. The cartridge was bad therefore the prongs struck Inmate Cowart's jumpsuit and had no effect. Inmate Cowart, bending down to avoid being hit with the taser, continued to move toward Corporal Williams. E-Team Officer Cassandra Smith was positioned to the right of Officer Kendrick. She deployed her taser, aiming at Inmate Cowart's chest. Because he was bending down, the prongs struck his head. Medical was called and the nurse examined him. She made no comment or recommendations concerning Inmate Cowart. He was relocated to Booking and Lieutenant Crenshaw called me.

I instructed Lieutenant Crenshaw to call the nurse on duty to try to remove the prongs from Inmate Cowart's head. When she was unable to remove the prongs, I ordered Inmate Cowart be transported to the ER to have the prongs removed. Two deputies transported Inmate Cowart to Baptist South ER where the prongs were successfully removed and he was returned to the detention facility.

Wanda J. Robinson

Sworn to and subscribed before me this 11 day of June, 2007.

Notary Public
My Commission Expires September 13, 2010

# MONTGOMERY COUNTY DETENTION FACILITY
## INCIDENT REPORT

**REPORT#:** 02-28-06-001 **DATE OF REPORT:** 02-28-06
**TIME OF REPORT:** 2200 Hours **LOCATION:** 4-Isolation
**TYPE OF INCIDENT:** Inmate Displaying Disruptive Behavior **TIME:** 1855 Hrs.
**REPORTED BY:**

| LAST NAME | FIRST NAME | RANK | ID# |
|---|---|---|---|
| Williams | D. | Corporal | |

### INMATES INVOLVED IN INCIDENT

| NAME (LAST, FIRST) | RACE/ SEX | BOOKING # | CELL | WITNESS/VICTIM/OFFENDER (INDICATE ONE) |
|---|---|---|---|---|
| Cowart, Anthony | B/M | 7889 | 4I-2 | Offender |
| Woodall, Dennis | B/M | 69418 | 4I-8 | Mentioned |

### INJURY TO VICTIM

EXTENT OF VICTIM INJURY: (x) MINOR ( ) SERIOUS ( ) FATAL
TYPE OF INJURY: See Nurses Notes
VICTIM HOSPITALIZED: ( ) YES (x) NO
IF "YES" WHAT HOSPITAL: N/A

### MEDICAL ACTION

DESCRIBE MEDICAL ACTION: See Nurses Notes

### DETAILS OF INCIDENT

DESCRIBE INCIDENT IN DETAIL (WHO, WHAT, WHERE, WHEN, HOW, WHY, AND ACTION TAKEN BY OFFICER)

On February 28, 2006, at approximately 1855 hours, Sergeant Garner, Corporal Williams, **E-Team members** Smith and Kendrick along with Officer Franklin arrived at 4-Isolation. The staff members were there to relocate Inmate Woodall from 3-south to 4I-8, pending disciplinary charges. Sergeant Garner entered the control booth to allow the officers entrance into the area. Upon entering the cell area, the officers secured Inmate Woodall into his assigned cell. At that time, Officer Smith informed Corporal Williams that Inmate Cowart, who was in the dayroom area on the phone, needed to return to his cell because his time had expired. As the officers began to exit the cell, Corporal Williams informed Inmate Cowart that his time was up and he needed to lock down. Inmate Cowart stated that he was talking to his children's mother due to one of them being sick. At that time, Inmate Cowart continued to talk on the phone. Corporal Williams again ordered Inmate Cowart to hang up the phone and lock down, to no avail. Inmate Cowart then became verbally abusive toward Corporal Williams. Corporal Williams issued several more orders for Inmate Cowart to lock down, to no avail. After several seconds, Inmate Cowart stated to the party on the phone "let me get off this phone before I do something to one of these officers."

As Inmate Cowart hung up the phone, he began threatening to do bodily harm to Corporal Williams. Officer Franklin attempted to direct Inmate Cowart toward his cell 4I-2, to no avail. Inmate Cowart stopped and turned back toward

(Continued from first page) **INCIDENT REPORT#** 02-28-06-001

Corporal Williams, making verbal threats and using aggressive body gestures (raising his closed fist in a fighting posture). At that time, Corporal Williams retrieved his chemical irritant and pointed it toward Inmate Cowart. However, he did not deploy his chemical irritant. Inmate Cowart then lowered his hands but continued to make verbal threats. Inmate Cowart raised his closed fist a second time in an aggressive manner. Corporal Williams then deployed his chemical irritant striking him in the facial area. During the deployment of the chemical irritant, Inmate Cowart made an overt move by swinging around and made a sudden motion toward Corporal Williams. At that time, Officer Kendrick, who was positioned to the right and forward of Corporal Williams, deployed her X-26 taser with the probes striking Inmate Cowart in the back of his jumpsuit. There was no immediate effect from Officer Kendrick deploying her taser. Inmate Cowart, in an attempt to avoid being struck by the taser, turned and continued to move forward toward Corporal Williams. Inmate Cowart lowered his body in an attempt to avoid a direct hit. Officer Smith, who was positioned to the right of Officer Kendrick and at ready gun also, immediately deployed her taser, striking Inmate Cowart in the head. Officer Smith later reported having aimed at center mass. Inmate Cowart was immediately immobilized. Corporal Williams immediately placed Inmate Cowart in handcuffs. Inmate Cowart was escorted onto 4-I hallway and placed inside the security strip facing the wall.

Sergeant Garner reported to 4-South control booth and spoke with Lieutenant Matthews and informed her of the situation. Upon returning to the hallway, Sergeant Garner noticed blood trickling from Inmate Cowart's head. Upon further observation, Sergeant Garner noticed the taser probes protruding from Inmate Cowart's Afro. She immediately asked Nurse Hill to check Inmate Cowart. Nurse Hill made a general observation, but made no comment or suggestion. Sergeant Garner ordered that Inmate Cowart be escorted to booking. Once in booking, Lieutenant Crenshaw, who had been made aware of the situation by Lieutenant Matthews, observed the location of the taser probes.

Due to recent prisoner transport procedure changes, Lieutenant Crenshaw contacted Major Robinson and informed her of the situation. Major Robinson ordered that the on duty nurse make an attempt to remove the probes. Nurse Hill carefully attempted to remove the probes but determined that they were embedded to deeply. Lieutenant Crenshaw contacted Major Robinson and informed her of Nurse Hill's determination. Major Robinson later called the facility and stated that Lieutenant Persky (MCSO) would be reporting to the facility. At approximately 1930 hours, Lieutenant Persky arrived at the facility. He too, observed the location of the probes and agreed that Inmate Cowart should be transported to a medical facility. Lieutenant Crenshaw contacted Major Robinson while Lieutenant Persky arranged for a patrol car to transport Inmate Cowart. At approximately 1950 hours, Deputies Lucie and Byrts arrived at the facility and transported Inmate Cowart to Baptist South ER.

Inmate Cowart will be charged with the following violations:

**A-1 Acting insolent toward personnel**
**A-3 Using abusive language**
**B-6 Failing to comply with an officer's lawful order**
**B-16 Violating rules or regulations**
**C-17 Acting in a way that disrupts or interferes with security or orderly running of facility**
**C-22 Attempting to intimidate or actually intimidating/controlling personnel through coercion, force or threat**

**REPORT#** 02-28-06-001

**By signing below I concur with the content of the report.**

**Report prepared by:** Sgt. Williams **Date:** 02-28-06

**Supervisor Signature:** Lt. M. L. Pinkham **Date:** 02-28-06

**By signing below I concur with the content of the report.**

**Responding Officers:**

Ofc. Kendrick **Date:** 02-28-06

Ofc. C. Smith **Date:** 02-28-06

Lt. McWilliams **Date:** 02-28-06

Sgt. Gaine **Date:** 02-28-06

**Date:** 02-28-06

**By signing below I concur with the content of the report.**

**Medical Staff:**

**Date:**

**Date:**

**Date:**

PROGRESS NOTES 4F

| Date/Time | Inmate's Name: Anthony Cowart D.O.B.: 4-2-70 S.S. #: 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 |
|---|---|
| 2-12-05 3:00pm | pt with complaint of bite to (L) side of face below (L) eye. Area swollen with redness at site. pt stated it was a spider bite. Cleaned area with betadine pad and placed triple Antibiotic ointment on area. per protocol placed on keflex 500mg PO BID x 7 days. pt given small amount of antibiotic ointment to KOP. — [signature] RN |
| 10/13/05 | I/m asking for tennis shoes due to flat feet swollen legs and having to jump off top bunk. — [signature] |
| 11/10/05 | I/m c/o boils under arm. Started on Bactrim DS i PO BID x10d — [signature] |
| 11/26/05 | I/m c/o sinus congestion. Decongestine i PO BID x 7d started. — [signature] |
| 12/18/05 | I/m c/o sinus congestion. Decongestine i PO BID x 7d — Chasity Smith, LPN |
| 2/21/06 | I/M c/o sinus congestion. Decongestine i PO BID x 12 days. — K Williams LPN |
| 2-28-06 | I/M unresponsive, tagged, 2 prongs lodged in head. Sent to BMC/ER [signature] I/M returned c 2 stitches in temple. [signature] |
| 3/16/06 @ 3:20p | I/m brought to medical unit Alert & oriented x3. Resp. even & unlabored VS WNL B/P 112/70, (R) 16 (P) 76 (T) 98. I/m c/o H/A. I/m had injury to temple 2/28/06. I/m was sent Baptist ER at rtn to unit c sutures. I/m stated sutures were removed 3/8/06. Areas of injury s̄ any s/s of infection. Skin remains intact, area healed. Gait steady. Denies any dizziness or N/V @ this time. (F) ROM noted to (L) ext. I/M remains s̄ difficulty. No acute distress observed @ this time. I/m placed on pain protocol. Advised to notify medical c any c/o. I/m agreed — [signature] |

Southern Health Partners, Inc. Corporate Office: Please note our new billing address: Southern Health Partners, Inc.

OGRESS NOTES 4F

| e/Time | Inmate's Name: Anthony Cowart D.O.B.: 4-2-70 S.S.#: 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 |
|---|---|
| -12-05 3:00pm | pt with complaint of bite to (L) side of face below (L) eye. Area swollen with redness at site. pt stated it was a spider bite. Cleaned area with betadine pad and placed triple Antibiotic ointment on area. per protocol placed on keflex 500mg PO BID x 7 days. pt given small amount of antibiotic ointment to KOP. Dee A Hall RN |
| 0/13/05 | I/m asking for tennis shoes due to flat feet swollen legs and having to jump off top bunk. Bowman |
| 1/10/05 | I/m c/o boils under arm. Started on Bactrim DS i PO BID x10d Bowman |
| 1/26/05 | I/m c/o sinus congestion. Decongestant i PO BID x7d started Bowman |
| 2/18/05 | I/m c/o sinus congestion. Decongestant i PO BID x7d Charity Smith, LPN |
| 2/21/06 | I/M c/o sinus congestion. Decongestant i PO BID x 12 days. K Williams |
| -28-06 | I/M uncooperative, tazed, 2 prongs lodged in head. Sent to BARC/ER. [illegible] I/M returned c 2 stitches in temple. [illegible] |

# Mo..tgomery County Sheri..'s Office

## Use of Force Report

**Case #:** ____________ **Date of Incident:** Feb. 28, 2006 **Time of Incident:** 18:55

**Nature of Call or Incident:** ____________

**Subject's Name:** Cowart Anthony **D.O.B.:** 4-2-1970 **Race / Sex:** Blk / Male

**Subject's Address:** 3336 Royal Creek Rd Montg, AL 36116 **Phone #:** ____________

**Reason for Use of Force:**
- ☐ Necessary to effect arrest
- ☑ Necessary to defend Deputy
- ☑ Necessary to defend another
- ☐ To prevent a violent, forcible felony
- ☐ To restrain for subject's safety
- ☐ Mental Pick-up
- ☐ Other ____________

**Was subject injured?** ☑ Yes ☐ No **Explain:** To the head area

**Where was subject treated for injuries?** ____________ **Physician or Medical Facility:** Baptist South

**Was subject rendered unconscious?** ☐ Yes ☑ No **Explain:** ____________

**# of subjects that resisted arrest or assaulted Deputies:** 1 **# of Deputies present at time of arrest:** 4

**At the time of arrest, was subject?**
- ☐ Under the influence of alcohol
- ☐ Suspected under the influence of alcohol
- ☐ Under the influence of a drug
- ☐ Suspected under the influence of a drug
- ☑ Other ____________

**Level of Resistance:**
- ☐ Psychological Intimidation, explain ____________
- ☐ Verbal Threats, explain ____________
- ☐ Passive Resistance, explain ____________
- ☐ Defensive Resistance, explain ____________
- ☒ Active Aggression, explain Subject with Closed Fist - Aggressively came toward Cpl. Williams
- ☐ Aggravated Active Aggression, explain ____________
- ☐ Armed aggression, explain ____________

**Level of Control Effected:**

| | | |
|---|---|---|
| ☐ Struck w/Hand or Leg Sweep | Type: | # of strikes: |
| ☐ Pressure Point or Joint Manipulation | Type: | # of times: |
| ☐ Chemical Irritant | Type: | # of times: |
| ☒ Electrical Control Device | Type: X-26 Tazer | # of times: 1 |
| ☐ Impact Weapon or Flashlight | Type: | # of strikes: |
| ☐ Other Non-Lethal Weapons | Type: | # of times: |
| ☐ Canine | Name: | # of bites: |
| ☐ Firearm | Type: | # of shots: |
| ☐ Stinger Spikes | # of Tires & Location | |

Affected Area of Body: Head Area

Effect: Subject fell to the floor and was hand cuffed

Subject's Injuries & Location of Injuries: See Medical Notes

Medical attention necessary: See Medical Notes

Supplemental narrative: Inmate Cowart Anthony was given several direct orders to get off the telephone and lockdown inmate Cowart refused. Inmate Cowart became very aggressive & Combative towards Cpl. Williams. and using verbal threats. Cpl Williams deployed Chemical Irritant but it had no affect on inmate Cowart. Inmate Cowart was still aggressive toward Cpl Williams. Then CO. Hendrick deployed her X-26 tazer but no affect due to bad cartridge. CO Smith was in ready position amied center of Chest on inmate Cowart with X-26 tazer, while deploying tazer Subject ducked to avoid being tazed, striking Subject in head area

Detention Facility Supervisor notified? ☑ Yes ☐ No Name: Lt. Crenshaw

Detention Facility Nurse notified? ☑ Yes ☐ No Name: Nurse Hill

Deputy: C.O. C. Smith ID #: Date: Feb. 28, 2006

Supervisor: [signature] ID #: 11440 Date: 2-28-06

***Note: A separate form should be filled out by each Deputy or Correction Officer involved with use of force.

A copy of this form must be forwarded to the Assistant Chief Deputy

Form #SHF-900-040

# Montgomery County Sheriff's Office

## Use of Force Report

**Case #:** ______ **Date of Incident:** 2/28/06 **Time of Incident:** 1855

**Nature of Call or Incident:** ______

**Subject's Name:** Anthony Cowart **D.O.B.:** 4/2/70 **Race / Sex:** B/M

**Subject's Address:** ______ **Phone #:** ______

**Reason for Use of Force:**
- ☐ Necessary to effect arrest
- ☐ Necessary to defend Deputy
- ☑ Necessary to defend another
- ☐ To prevent a violent, forcible felony
- ☐ To restrain for subject's safety
- ☐ Mental Pick-up
- ☐ Other ______

**Was subject injured?** ☐ Yes ☑ No **Explain:** ______

**Where was subject treated for injuries?** No **Physician or Medical Facility:** ______

**Was subject rendered unconscious?** ☐ Yes ☑ No **Explain:** ______

**# of subjects that resisted arrest or assaulted Deputies:** 1 **# of Deputies present at time of arrest:** 4

**At the time of arrest, was subject?**
- ☐ Under the influence of alcohol
- ☐ Suspected under the influence of alcohol
- ☐ Under the influence of a drug
- ☐ Suspected under the influence of a drug
- ☑ Other ______

**Level of Resistance:**
- ☐ Psychological Intimidation, explain ______
- ☐ Verbal Threats, explain ______
- ☐ Passive Resistance, explain ______
- ☐ Defensive Resistance, explain ______
- ☑ Active Aggression, explain Subject with closed hand (fist) aggressively came toward Cpl. Williams.
- ☐ Aggravated Active Aggression, explain ______
- ☐ Armed aggression, explain ______

**Level of Control Effected:**

| | Control | | | |
|---|---|---|---|---|
| ☐ | Struck w/Hand or Leg Sweep | Type: | # of strikes: | |
| ☐ | Pressure Point or Joint Manipulation | Type: | # of times: | |
| ☐ | Chemical Irritant | Type: | # of times: | |
| ☑ | Electrical Control Device | Type: Taser X 26 | # of times: 1 | |
| ☐ | Impact Weapon or Flashlight | Type: | # of strikes: | |
| ☐ | Other Non-Lethal Weapons | Type: | # of times: | |
| ☐ | Canine | Name: | # of bites: | |
| ☐ | Firearm | Type: | # of shots: | |
| ☐ | Stinger Spikes | # of Tires & Location | | |

Affected Area of Body: Back

Effect: None (bad cartridge)

Subject's Injuries & Location of Injuries:

Medical attention necessary:

Supplemental narrative: Ofc. Kendrick responded to a situation in 4 Isolation. Anthony Cowart was given several direct orders to lockdown, to no avail. Inmate Cowart became extremely aggressive. Cowart was maced which had no effect then Ofc. Kendrick deployed her taser striking the subject in his jumpsuit which had no effect due to having a bad cartridge.

Detention Facility Supervisor notified? ☑ Yes ☐ No Name: Lt. Crenshaw

Detention Facility Nurse notified? ☑ Yes ☐ No Name: Nurse Hill

Deputy: C.O. Kendrick ID #: Date: 2/28/06

Supervisor: [signature] ID #: 11440 Date: 2-28-06

***Note: A separate form should be filled out by each Deputy or Correction Officer involved with use of force.

A copy of this form must be forwarded to the Assistant Chief Deputy

Form #SHF-900-040

# Montgomery County Sheriff's Office

## Use of Force Report

Case #: ______ Date of Incident: 2-27-06 Time of Incident: 18:55

Nature of Call or Incident: Inmate Relocation

Subject's Name: Anthony James Cozart D.O.B.: 04/02/70 Race / Sex: B/M

Subject's Address: 3336 Royal Creek Road Phone #: 334 244-2341

Reason for Use of Force:
- ☐ Necessary to effect arrest
- ☑ Necessary to defend Deputy
- ☐ Necessary to defend another
- ☐ To prevent a violent, forcible felony
- ☐ To restrain for subject's safety
- ☐ Mental Pick-up
- ☐ Other ______

Was subject injured? ☐ Yes ☑ No Explain: ______

Where was subject treated for injuries? ______ Physician or Medical Facility: ______

Was subject rendered unconscious? ☐ Yes ☑ No Explain: ______

# of subjects that resisted arrest or assaulted Deputies: 1 # of Deputies present at time of arrest: 4

At the time of arrest, was subject?
- ☐ Under the influence of alcohol
- ☐ Suspected under the influence of alcohol
- ☐ Under the influence of a drug
- ☐ Suspected under the influence of a drug
- ☑ Other ______

Level of Resistance:
- ☐ Psychological Intimidation, explain ______
- ☐ Verbal Threats, explain ______
- ☐ Passive Resistance, explain ______
- ☐ Defensive Resistance, explain ______
- ☑ Active Aggression, explain See supplemental narrative
- ☐ Aggravated Active Aggression, explain ______
- ☐ Armed aggression, explain ______

Level of Control Effected:

| | | | | |
|---|---|---|---|---|
| ☐ Struck w/Hand or Leg Sweep | Type: | | # of strikes: | |
| ☐ Pressure Point or Joint Manipulation | Type: | | # of times: | |
| ☑ Chemical Irritant | Type: | Freeze +P | # of times: | 1 |
| ☐ Electrical Control Device | Type: | | # of times: | |
| ☐ Impact Weapon or Flashlight | Type: | | # of strikes: | |
| ☐ Other Non-Lethal Weapons | Type: | | # of times: | |
| ☐ Canine | Name: | | # of bites: | |
| ☐ Firearm | Type: | | # of shots: | |
| ☐ Stinger Spikes | # of Tires & Location | | | |

Affected Area of Body: FACE

Effect: No effect

Subject's Injuries & Location of Injuries:

Medical attention necessary:

Supplemental narrative: Cpl. Williams gave several direct orders for inmate Cowart, Anthony to lock down but to no avail. Inmate Cowart began to get very aggressive toward Cpl. Williams. Inmate Cowart, Anthony raised his fist in an aggressive manner. Cpl. Williams deployed his chemical irritant, striking him in the face, no effect was observed.

Detention Facility Supervisor notified? ☑ Yes ☐ No Name: LT. Crenshaw

Detention Facility Nurse notified? ☑ Yes ☐ No Name: Nurse Hill

Deputy: Cpl. Williams ID #: 80217 Date: 2-28-06

Supervisor: Lt. M L Crenshaw ID #: 11440 Date: 2-28-06

***Note: A separate form should be filled out by each Deputy or Correction Officer involved with use of force.

A copy of this form must be forwarded to the Assistant Chief Deputy

Form #SHF-900-040

# HANDBOOK
# on
# INMATE RULES AND REGULATIONS

**MONTGOMERY COUNTY DETENTION FACILITY**
**MONTGOMERY, ALABAMA**

A Division Of
The Montgomery County Sheriff's Office

**D.T. MARSHALL, SHERIFF**

Gina M. Savage
DIRECTOR OF DETENTION

REVISED EDITION January 2004

# Inmate Handbook

## Montgomery County Sheriff's Office

**D.T. Marshall**
**Sheriff**

**Gina M. Savage**
**Director of Detention**

The Montgomery County Detention Facility houses inmates awaiting trial and convicted inmates either serving county sentences or serving state sentences and awaiting transfer to a state penitentiary.

This handbook is intended to inform you of the rules and regulations of the Montgomery County Detention Facility and to clearly define restrictions, privileges, programs and services which will affect your stay here. It is your responsibility to read this handbook so that you may better understand how to conduct yourself.

It is necessary that you understand the basic principles which govern the management of this facility:

1. **Security is of the highest priority** – any action on the part of one or more inmates that jeopardizes or appears to jeopardize security will not be tolerated and will be dealt with quickly and firmly.

2. The safety of all persons in the Montgomery County Detention Facility, both inmates and staff, is equally important to security. All regulations of this facility are designed to promote efficiency and cooperation. Your attitude and conduct will play a major role in determining the quality and/or length of your stay, as well as the programs and services available to you. Additionally, if you are transferred to the State System, comments and recommendations by the Montgomery County Detention Facility Staff, based on your attitude, behavior, and institutional violations, will be forward with you. These comments and recommendations may influence your classification and affect the quality of your stay while in the penitentiary.

# 1. Inmate Responsibilities

## A. Identification Bracelet

1. You will be issued an identification bracelet when you enter the Montgomery County Detention Facility. Your identification bracelet must be worn at all times during your stay and must be turned in when you are released from the facility. If you lose or misplace your ID bracelet, you will be charged $10.00 for a replacement.

2. You must present your ID bracelet in order to receive canteen items, razors, mail or medications and to be given access to the library, recreation, visitation, phone calls, and haircuts. Showing your ID is inclusive of, but not limited to, these items listed.

## B. Personal Cleanliness (Showing YOUR ID REQUIRED)

1. Hygienic supplies for maintaining proper personal hygiene are available for purchase through the canteen or will be given weekly if indigent.

2. You should shower as often as necessary to keep your person clean and free from odors. The Facility will provide you with soap and towels for this purpose. If a fellow inmate complains about your body odor, or if a Facility officer detects such odors, you will be required to shower. If you refuse, you will be forcibly showered by an officer of the same gender. In addition, you will be subject to certain restrictions.

3. Disposable razors, toenail clippers, and fingernail clippers are provided by the Facility for your use.

4. You will be dressed in your full uniform, i.e. jumpsuit, shirt, pants, slides/ shoes, when you exit the dayroom area. While you are in the dayroom, you may wear a T-shirt and pants or a T-shirt with your jumpsuit top folded down and tied around your waist.

5. You will not wear tennis shoes inside the cellblock. Tennis shoes will be worn only when you are en route to and from, or actively participating in, outdoor recreation.

6. You should be especially watchful for crab lice. The prevalence of vermin is much greater where groups of people live together, particularly when they come from all walks of life. You should examine yourself daily or each time you shower. Should you become infected, you should immediately notify an officer.

## C. Detention Facility Property

1. Bedding, towels, jump-suits, and other articles assigned to you belong to the Detention Facility. You must return them in good condition when you leave. If not, then you may be required to pay for the damage or loss you have caused. Property assigned to you cannot be transferred to another inmate.

   Be careful not to damage plumbing or other equipment. REMEMBER, if you are found guilty of any destruction or loss of county property, after a hearing you may be prosecuted and may be required to pay for the damage or loss you have caused. Any debt incurred will remain on your account indefinitely or until paid in full.

## D. Housekeeping Activities

1. You are required to clean your living quarters and share in maintaining cleanliness throughout the Facility. Your quarters will be thoroughly cleaned each morning, or more frequently if necessary. All inmates should share equally in performing these tasks. Hiring or transferring responsibilities to other inmates through devious means is prohibited. If you rebel or refuse to clean your quarters, or refuse to participate in required housekeeping activities, you will be subject to immediate disciplinary action.

2. All floors will be swept and mopped each morning, and more frequently if required.

3. All trash containers will be emptied and cleaned each morning, and more frequently if required.

4. Commodes and lavatories will be cleaned each morning, and more frequently if required.

5. Walls will be washed as needed. No writing or drawings will be allowed on the walls, doors, floors, etc. Covering of windows, air vents or cell doors will not be allowed.

6. No trash or debris will be thrown or swept behind or under the wire doors or interconnect doors.

## E. Conduct

1. Gambling and fighting are prohibited. You must obey all Detention Facility rules and follow the detention officer's instructions. You must conduct yourself in an orderly manner with respect for the rights of staff and other inmates. If you fail to do so, you may lose the privileges which are permitted

to inmates in good standing, even to the point of disciplinary segregation. You are prohibited from controlling or attempting to control the actions or behavior of staff or other inmates by threat, promise, fear, force, or any other means. You cannot ridicule, tease, harass, or molest staff or another inmate.

F. **<u>Conduct and Work of Trusties, Work Release and Volunteer Workers</u>**

1. You will make your bed daily, your quarters will be cleaned daily, and you will be responsible for your own personal area.
2. You will shower daily and wear clean clothes.
3. You will be clean shaven and hair will be neatly trimmed.
4. You will be allowed to keep one (1) pair of tennis shoes in your possession. You may wear tennis shoes in your cellblock or when performing your assigned duties.
5. You will not use obscene language, talk loudly, or conduct yourself in any way which will reflect discredit on the Facility or the Sheriff's Office.
6. You will not visit or enter a lock-up cell block unless you are on a work detail. You will not do anything for lock-up inmates except what is required in your normal duties. If you are found in a lock-up cell block and are not on your assigned work detail, you will be subject to disciplinary action.
7. You may not be taken from the Facility on a detail except with an authorized person unless you are assigned to a work release program. You will not leave the Facility except to perform assigned duties or to accompany and assist officers in functions approved by the Sheriff, Chief Deputy, Facility Director or OIC. You will remain within sight of the authorized person at all times.
8. When you have completed your assigned duties, you will return to your quarters or to an area as directed by your supervising officer.
9. Violation of any of the above rules may subject you to disciplinary action or the loss of trusty or volunteer worker status.

**Volunteer Worker**

To be considered as a volunteer worker, you must be a pre-trial inmate incarcerated with non-violent charges and a low bond amount. Volunteer workers receive the same privileges as trusties. If you are

interested in becoming a volunteer worker you should submit an *Inmate Request Form* to the Captain of Program Services by placing it in the mailbox located in the dayroom of your cellblock.

2. **Inmate Privileges**

A. **<u>Programs/Services</u> (Showing INMATE ID REQUIRED)**

- **Educational class attendance** is required for those inmates who have not graduated high school and are under the age of 18; 21 special education.
- **GED and tutoring** classes, when available, are offered on a voluntary basis.
- **Library** use is a privilege available by submitting an *Inmate Request Form* by placing it in the mailbox located in the dayroom of your cellblock. You may check out 2 books at a time.
- **NA and AA** meetings, when available, are offered weekly to volunteers and court referrals.
- **Substance abuse treatment** programming, when available, is open to volunteers and court referrals.

B. **<u>Religious and other Services</u>**

Religious services are offered by the Facility Chaplain Monday–Friday. Requests for additional services or programs should be addressed to the Captain of Inmate Programs/Services.

C. **<u>Canteen</u> (Showing INMATE ID REQUIRED)**

You are allowed to purchase snacks, hygiene items, etc. *Canteen Order* sheets are collected each Sunday and Wednesday evenings and canteen is delivered Tuesday and Friday mornings (except holidays). Money must be in your account by Friday for Tuesday delivery and Wednesday for Friday delivery.

You have three (3) days to report non-delivery of store order (not shortage). If you leave this facility prior to delivery of your order, you or a person designated by you have three (3) days to pick-up the order. After three (3) days, all unclaimed orders will be destroyed.

***MCDF DOES NOT PROVIDE FREE HYGIENE ITEMS TO ALL INMATES. INMATES WHO ARE NOT CLASSIFIED INDIGENT* WILL BE EXPECTED TO PURCHASE HYGIENE ITEMS FROM THE CANTEEN.***

**<u>Indigent</u>**– *impoverished or lack of financial resources*

**Indigent Hygiene Pack Qualifications:**

1. You must have **$2.00 or less** in your canteen account to receive a Hygiene Pack.

2. You must be in an indigent status for 30 days prior to ordering to qualify for Hygiene Pack.

3. If you wish to request an Indigent Hygiene Pack, you must submit an *Inmate Request Form*. *Inmate Request Forms* are collected each Sunday evening. Do not place this form in the dayroom mailbox.

**Indigent Writing Materials:**

1. You must have **$2.00 or less** in your canteen account to receive an Indigent Writing Pack.

2. If you wish to request an Indigent Writing Pack you should submit a *Canteen Order Form*. The top portion of the *Canteen Order Form* shoud be completed (Location, Name, Signature, Booking Number). *Canteen Order Forms* are collected each Sunday evening. Do not place this form in the dayroom mailbox.

3. Indigent Writing Packs will be delivered on Thursdays when the canteen orders are delivered.

4. You will be charged $1.25 for each Indigent Writing Pack you receive. In the event you have no funds or only partial funds in your account, the account will be placed in a negative balance. When funds are received, the total remaining fees will be deducted from your account.

**Radios**

1. The canteen offers radios and batteries for purchase. You may have no more than 1 radio and 9 batteries at any one time.

**D. Recreation (Showing INMATE ID REQUIRED)**

1. The Montgomery County Detention Facility provides a recreation program for all inmates who wish to participate.

2. This program includes facilities for both indoor and outdoor recreation and equipment for various types of individual and team activities.

3. You may be given the opportunity to participate in the recreation program Monday through Friday between 7:30 AM – 11:00 AM and 2:30 PM– 4:00 PM.

4. If you wish to participate in basketball or other games which may be played in the outdoor recreation area, you must wear tennis shoes. Tennis shoes will not be worn inside the cellblock. Tennis shoes will only be worn when you are en route to and from, or actively participating in, outdoor recreation.

   a. Tennis shoes are normally available for purchase from the canteen.
   b. Tennis shoes are not issued to you by the Facility nor are they authorized to be brought to you from outside sources.
   c. Tennis shoes are not issued free to indigent status inmates.

**E. Haircuts (Showing INMATE ID REQUIRED)**

1. Haircut services are provided each Tuesday by a licensed barber. You should submit a *Request for Haircut* form, obtained from the booth operator or rover, along with your *Canteen Order* form on Sunday evening.

2. You must have money in your canteen account in order to purchase a haircut. Once you submit you *Request for Haircut* form and money is deducted from your canteen account, you will not be issued a refund should you change your mind. Prices for haircuts are as follows:

   a. Fade $8.00
   b. Regular haircut $6.00
   c. Line $3.00
   d. Shave/Shape $3.00
   e. Moustache Trim $2.00

3. Indigent inmates may submit a *Request for Haircut* form one (1) week prior to jury trial.

4. Trusties will receive one (1) free, regular haircut the first Tuesday of each month when you submit a *Request for Haircut* form.

**F. Phone Calls (Showing INMATE ID REQUIRED)**

1. When you are processed into the Montgomery County Detention Facility you will be allowed to make one phone call. Care will be exercised by the OIC of the shift to ensure that you do establish telephone contact with the intended party.

2. When you enter the facility, you will be assigned a Pin Number. Memorize your Pin Number. Do not share it with anyone. The first 10 numbers you dial will be the only numbers you will be allowed to call while you are incarcerated. These numbers include calls that are accepted, calls that are denied, calls that are blocked, etc.

3. All calls, with the exception of the initial call allowed when you enter the Facility, will be made collect to the receiving party. You must know the telephone numbers of the persons you are calling. Directory assistance is not available. Station-to-station calls will be billed to the receiving party by the telephone company at the current rate of $3.00 for a 15-minute call. Rates are subject to change.

4. Telephone calls, other than those permitted at the time of initial entry into the Facility, are a privilege and not a right and may be given to those who need them and have earned them through cooperation with Facility personnel in conforming to the prescribed rules and regulations of the Montgomery County Detention Facility.

5. If you are here from the Department of Corrections, you will not be allowed the initial phone call at the time of entry.

6. For security purposes, telephone calls will be recorded and may be monitored.

G. <u>Mail/Correspondence/Packages</u> (Showing INMATE ID REQUIRED)

**Legal Mail**

1. You have a legal right to communication, without censorship, with counsel of your choice, public officials or the Courts. If applicable, you will be permitted to communicate, without censorship, within reasonable limits, with the Attorney General, the Director of the Bureau of Prisons, the Pardon and Parole Attorneys, the United States Marshalls, the United States District Judges, and any District Attorney or Circuit Court Judge.

2. Incoming communications addressed to you from any of the sources named above will not be subject to censorship. However, said communications will be opened in your presence by the office delivering your mail for the purpose of checking for contraband.

3. Incoming or outgoing communication between you and your attorney (licensed to practice in the State of Alabama) will not be opened except in your presence and then only to check for contraband.

4. Your attorney is prohibited from mailing out any letter, document, or correspondence for you or any other inmate in this facility.

**Outgoing Mail**

1. Normally you will be permitted to correspond with your family and friends. While awaiting trial, you may correspond with any individual you need to contact in the preparation of any defense. You are encouraged to maintain written contact with your family and friends while in the Montgomery County Detention Facility.

2. Contents of your letters shall be limited to matters of personal interest to friends and relatives. Other inmates in the Facility or Facility personnel are not to be discussed in outgoing mail. The use of profanity, threats, pornography, or diagrams of any part of this Facility is strictly prohibited.

3. Normally outgoing mail will not be opened for inspection unless there is reasonable cause to suspect it contains contraband which may affect the security of the Facility, inmates and/or staff. Such suspected mail will be opened only by order of the Director or Assistant Director, and then only in the presence of the sender.

4. Envelopes, stamps, pencils and paper supplies are available for purchase from the Canteen. If you wish to purchase writing supplies, complete a *Canteen Order Form* and submit it on the appropriate day. Handmade envelopes will not be accepted.

5. All outgoing mail must have a valid stamp affixed to the envelope. The following information must be written or printed in the upper left-hand corner of the envelope:

**First and Last Name *(No initials or nicknames)***
**Booking #________________MCDF**
**P.O. Box 4599**
**Montgomery, Alabama 36103**

6. You should ensure that the address section of outgoing mail contains full information, i.e. first and last name, street address, city, state and zip code. Outgoing mail not properly addressed will be destroyed.

**Incoming Mail**

1. During in processing, you may sign the Montgomery County Detention Facility *Inmate's Personal Property Envelope* (section pertaining to opening of mail) which authorizes the Sheriff or any of his officers to open all mail (with the exception of legal mail) that you may receive while incarcerated at the Montgomery County Detention Facility. If you refuse to sign the authorization, any mail addressed to you will not be accepted and will be returned to sender. This does not apply to legal mail.

2. To afford maximum privacy, incoming communications between you and any source will not be censored. However, it will be opened and examined for contraband, cash monies, money orders, business checks, dividend checks, government checks, etc. Any monies other than money orders or cashier's checks will be returned to sender.

3. Communications you receive after you have been released from the Montgomery County Detention Facility will be returned to sender.

4. The Montgomery County Detention Facility is not required to pay cost of "Postage Due" on any incoming mail. Correspondence received in this manner will be returned to sender.

5. Incoming mail should have a return name, street address, city, state and zip code. Incoming mail not properly addressed will be destroyed.

**H. Reading Materials (Check Out From Library)**

You are allowed to keep ***three (3) books*** in your possession at one time.

1 Religious Book
2 Library Books

**Reading materials from outside sources are not allowed.**

**I. Visitation (Showing INMATE ID REQUIRED)**

Non-public visitors (attorneys, court officials, ministers, etc.) may see inmates Monday–Friday from 8:00 AM – 11:OO AM, from 2:30 PM – 4:00 PM, or from 7:00 PM – 9:00 PM. Non-public visitors may have special visits by contacting the Captain of Inmate Programs or the Assistant Director. No visitation is allowed on holidays.

1. As part of the booking process, you should complete a visitation card listing the names, addresses, and relation of a maximum of five (5) visitors, including juveniles. Juveniles will not be left unattended at anytime. All visitors must be present at the same time and all adult visitors must produce photo identification in order to begin registration for visitation. The people listed on your visitation card will be the only approved visitors with the exception of non-public visitors such as attorneys, court officials, etc.

   Violation of any visitation rule will result in immediate termination of visit and/or loss of future visitation privileges. You may revise your visitation card the first of each month only.

2. You should list the name of <u>your</u> clergy on your visitation card. All clergy will be required to provide identification, as well as credentials, indicating they are ordained clergy.

3. You will receive only one (1) visit per week. The exception will be for inmates who are sentenced to the County Detention Facility or inmates who are volunteer workers. These inmates are classified as Trusties and they may receive two (2) visits per week.

4. Public visitation is based on the first letter of your last name, as well as your classification. Visitors will need to know your classification (Protective Custody, Suicidal, Trusty, General Population, etc.) in order to determine the proper visitation day and time. You are responsible for informing your visitors of your classification.

5. Registration for visits will begin fifteen (15) minutes prior to the scheduled visitation hours. Visitors will receive visits on a first come–first serve basis. Early registration is recommended due to limited visiting hours.

6. In most cases we have offered at least two different days and times for each letter of the alphabet. Visitors may choose the day and time convenient for them. However, non-trusty inmates receive only one (1) visit every seven (7) days.

7. Special visits, twice a month for one hour each visit, for individuals living outside the State of Alabama may be scheduled by contacting the Captain of Inmate Programs/Services.

**Visitation Schedule**

**General Population (Male)**

| | | |
|---|---|---|
| (A-L) | Saturday | 8:00 am to 11:00 am |
| (A-F) | Monday | 7:00 pm to 9:00 pm |
| (G-L) | Thursday | 7:00 pm to 9:00 pm |
| | *(One Visit per 7 days)* | |
| (M-Z) | Sunday | 8:00 am to 11:00 am |
| (M-S) | Wednesday | 7:00 pm to 9:00 pm |
| (T-Z) | Friday | 7:00 pm to 9:00 pm |
| | *(One Visit per 7 days)* | |

**Trusties (Male)**

| | | |
|---|---|---|
| (A-Z) | Saturday | 7:00 pm to 9:00 pm |
| (A-Z) | Tuesday | 7:00 pm to 9:00 pm |
| | *(Two Visits per 7 days)* | |

**General Population (Female)**

(A-Z) Sunday or Tuesday
7:00 pm to 9:00 pm
*(One Visit per 7 days)*

**Trusties(Female)**

(A-Z) Saturday and Sunday
2:30 pm to 4:30 pm
*(Two Visit per 7 days)*

**Protective Custody & Suicidal**

(A-L) Saturday
2:30 pm to 4:30 pm
(M-Z) Sunday
2:30 pm to 4:30 pm

## 3. Jail Operations

### A. Personal Property

You are not allowed to have valuable articles in your possession nor are you allowed to transfer clothing or other property to other inmates. Property found in violation will be confiscated and forfeited. Body jewelry and wigs are not allowed. At the time of booking, all property taken from you should be listed on the property inventory log.

Personal property may be released at any time during the first 72-hours of admittance. After that, property may be released on your scheduled visitation day. Excess property not picked up by family or friends within 7 days of booking will be destroyed.

You will be requested to sign your property slip at the point of booking. At the point of release, again you should sign your property slip fully acknowledging the fact that you have received all the items listed on the log. The Montgomery County Detention Facility has a $50.00 cap on its liability for any personal items. It is your responsibility to remove any personal property assessed at over $50.00 within three (3) days of admittance. Claims for lost inmate property should be filed with Detention Facility staff upon release.

### B. Money

Friends and relatives may deposit money orders (no cash or checks are accepted) in your inmate account Monday through Friday between the hours 8:00 AM–4:00 PM., excluding holidays. Money orders should be made payable to MCITF. You are not allowed to have money in your possession.

### C. Escape and Contraband

Any inmate who escapes, attempts to escape, assists another to escape, or is responsible for bringing into the Detention Facility any weapons, saws, tools, narcotic drugs, alcohol, hallucinogenic substances, or any items not approved by the Detention Facility will be prosecuted as provided by law. There will be no exceptions.

### D. Grievance

You are entitled to voice any grievance to the Jail Administration. You are encouraged to put the grievance in writing on the *Inmate Grievance Form* and place it in the mailbox located in the dayroom of your cellblock. The Administration will give prompt and fair consideration to any grievance and will take appropriate action when warranted.

### E. Food (Showing INMATE ID REQUIRED)

You will be served three meals a day at regular intervals. The food will be wholesome and nutritional. Since food is expensive, you must not waste it. The menus meet recommended dietary allowances, Alabama Administrative Code, American Correctional Association and Local Health Code Standards.

Uneaten food items should remain on your tray and be returned during pick-up. Hoarding of food items provided by the Detention Facility will not be allowed.

### F. Medical Services (Showing INMATE ID REQUIRED)

Reasonable and customary medical treatment is available to you. Limited dental treatment is also available. You may request, at your own expense, a private physician (such appointments will be made by this Facility and will be unknown to you and your family). Otherwise, the service will be in accordance with the Detention Facility's medical plan. You should have an opportunity to report illnesses daily through the *Inmate Request Forms*. You may refuse, in writing, health treatment and care; however, you must do so in the presence of the health care staff.

**Medical Charges to Inmates**

You will be charged a co-payment of $10.00 for all self-initiated, non-emergency medical services. However, indigent inmates will never be denied medical services.

If you are involved in an altercation that results in injury to another inmate or officer, you will be charged a medical fee for the injured inmate's or officer's medical treatment.

In the event you have no funds or only partial funds in your account, the account will be placed into a negative balance. When funds are later received, the total or remaining fees will be deducted from your account.

Upon release from the Facility, any unpaid medical fee balance will reflect a debit on your account from the date of release. If re-incarcerated, that debit will be deducted from any future funds then deposited to your account.

### G. Searches

Your cell, your bunk area, and your person will be subject to random searches for contraband.

You may be subject to unclothed searches under the following conditions:

1. Contact with persons from outside the facility
2. Re-entering secure area of facility
3. Legitimate penological concerns

## H. Laundry

Uniforms and linens are washed weekly. Blankets are washed every three (3) months. The only items that should be placed in your laundry bag are:

1. 1 Uniform
2. 1 Towel
3. 1 Face Cloth
4. 2 Sheets

**Do not send both uniforms to laundry on change-out day. We will not be responsible for, nor will we replace, any personal items that are lost. Do Not Place Personal Items In Laundry Bag.**

**Change-Out Schedule**

1. 4-North, 4-South and 4-Isolation change out day is Monday. Indigent hygiene requests should be sent down **Sunday** afternoon.
2. 3-North, 3-South and 3-Isolation change out day is Tuesday. Indigent hygiene requests should be sent down **Sunday** afternoon.
3. 2-South and Medical change out day is Wednesday. Indigent hygiene requests should be sent down **Sunday** afternoon.
4. 2-North, (D,E,F,G) change out day is Thursday. Indigent hygiene requests should be sent down **Sunday** afternoon.

## I. Television

Television is a privilege, not a right. Television privileges may be given to those cellblocks who have earned them through cooperation with facility personnel and by complying with the prescribed rules and regulations of the Montgomery County Detention Facility. The television may be turned on at 6:00 PM and will be turned off at 10:30 PM. Cellblocks with good behavior may receive additional television privileges for the weekend.

## J. Marriage

You will not be allowed to marry while incarcerated in the Montgomery County Detention Facility.

## K. Voting

Notices will be posted in cellblocks advising you of upcoming elections. If you are a registered voter, you may request an *"Application for Absentee Ballot"* from the county in which you are a legally qualified voter. You will receive a ballot thirty

(30) to forty-five (45) days before the election. You will be responsible for completing the ballot and mailing it to the Absentee Election Manager by the U.S. Mail.

## L. Lockdowns

When a lockdown is ordered, you should immediately go to your assigned room or sit on your mattress if you are assigned to the floor. You should remain quiet and in place until further notice is given.

This facility maintains complete security lockdown of all inmates daily during the following hours:

12:30 PM – 2:30 PM
9:30 PM – 6:00 AM

The facility may maintain security lockdown at other times as needed for special security reasons.

The facility will conduct a roll call at 2:00 PM each day. You should remain quiet and in place during this roll call.

Besides the routine inmate lockdown at shift changes, afternoons, and nights, there are times when security/emergency situations dictate additional needs for inmate lockdown. ***Therefore, it is necessary that all inmates, at all times, immediately obey orders to lockdown.***

- ***Inmates/cellblocks/dorms that refuse to lockdown immediately upon order to do so will cause that inmate/cellblock/dorm to go on 24-hour DISCIPLINARY LOCKDOWN and lose all inmate privileges for that 24 hours (i.e. no television, no telephones, no visitation, no canteen, no recreation, no library).***

  Any inmate/cellblock/dorm that continues to be ***non-compliant during the 24-hour DISCIPLINARY LOCKDOWN*** will have the ***DISCIPLINARY LOCKDOWN*** (and loss af all inmate privileges) ***extended for an additional 24-hour period.*** Inmate/cellblocks/dorms in this status will also be put on bagged meals. No inmates will be moved out of a cellblock/dorm while on ***DISIPLINARY LOCKDOWN*** status except for security reasons. If relocated, those inmates will be on ***24-HOUR DISCIPLINARY LOCKDOWN*** wherever they are housed.

- ***Inmates/cellblocks/dorms that are involved in incidents that threaten the security of this facility will cause that inmate/cellblock/dorm to go on 24-HOUR SECURITY LOCKDOWN and lose all inmate privileges for that 24 hours (i.e. no television, no telephones, no visitation, no canteen, no recreation, no library).***

Any inmate/cellblock/dorm that <u>continues</u> to be ***non-compliant during the 24-HOUR SECURITY LOCKDOWN*** will have the ***SECURITY LOCKDOWN*** (and loss of all inmate privileges) ***extended for an additional 24-hour period.*** Inmate/cellblock/dorms in this status will also be put on bagged meals. No inmates will be moved out of a cellblock/dorm while on ***SECURITY LOCKDOWN*** status except for security reason. If relocated, those inmates will be on ***24-HOUR SECURITY LOCKDOWN*** wherever they are housed.

**M. <u>Inmates Sentenced To Department of Corrections</u>**

Inmates entering Kilby Receiving Center will wear jumpsuits furnished by the Department of Corrections. The only personal property you will be allowed to take with you will be:

a. 1 plain gold or silver wedding band
b. Legal materials/documents pertaining to current or pending case(s)
c. 1 pair white tennis shoes
d. 1 watch (valued at $25.00 or less)
e. 1 Bible or Koran

You should complete a *Property Release Form* in order to have the property that you cannot take with you picked up. Property not picked up within seven (7) days will be destroyed.

**N. <u>Notary Services</u>**

Notary Service is provided for Federal legal documents only at a charge of $.50 (50 cents) per page.

**4. Violations, Penalties, Hearings**

**A. <u>Minor Violations</u>**

1. Acting insolent toward personnel
2. Lying or providing a false statement to staff
3. Using abusive language
4. Participating in an unauthorized gathering
5. Being in an unauthorized area, including another inmate's cell
6. Making, posessing, or using intoxicants
7. Smoking
8. Gambling
9. Being unsanitary/untidy; failing to keep your person or quarters clean
10. Loaning property or anything of value for profit
11. Malingering or feigning an illness
12. Failure to be fully dressed anytime outside of cell or off bunk or mattress
13. Wearing any material, in any way, on the head
14. Leaning on (or over) railings or sitting on the stairs
15. Using any Facility property for unintended purpose
16. Covering air vents with paper, etc.

**B. <u>Major Violations</u>**

1. Minor violations repeated 3 times
2. Possessing unauthorized clothing
3. Burning paper or any other material for any reason
4. Possessing any items not on the approved list of items allowed to inmates (i.e. contraband such as money, jewelry, cigarettes, lighters, matches, etc.)
5. Writing on the walls, furniture, clothing, or other minor damage to Detention Facility property of less than $50.00
6. Failing to comply with an officer's lawful order
7. Fighting
8. Attempting to control other inmates, whether through coercion, force or threat
9. Refusing to provide a urine or breath sample upon request
10. Giving or offering any official or staff member a bribe or anything of value
11. Destroying, altering, or damaging Detention Facility property or property of another person
12. Possessing unauthorized property belonging to another person or the government (stealing)
13. Tampering with or blocking any locking device
14. Hoarding, selling, or transferring medication issued by the Detention Facility or from any source
15. Failing to stand count or interfering with a count
16. Violating rules or regulations

17. Disrupting or abusing canteen, visitation, telephone, library, classes, or recreation privileges
18. Disrupting or abusing religious, medical, or food services, or any other Detention Faciltiy activity or program
19. Stoppage of, or placement of foreign objects or matter into toilets, showers, sinks or any other drains

C. **Serious Violations**

1. Major violations repeated 3 times
2. Murder
3. Starting any fire may be considered arson and you will be charged appropriately
4. Indecent exposure (masturbating)
5. Possessing or introducing a gun or other weapon into the Detention Facility
6. Rioting or encouraging others to riot
7. Assault and battery on inmate and/or personnel
8. Practicing extortion or blackmail, demanding or receiving anything of value in return for protection against others to avoid bodily harm or under threat of informing
9. Engaging in a sexual act
10. Making sexual proposals or threats
11. Possessing or introducing an explosive, or any object modified to be used as a weapon, chemical agent, or any type of ammunition, into the Detention Facility
12. Possessing, selling, using or introducing into the facility any narcotics, narcotic paraphernalia, drugs, or intoxicants not prescribed for the individual by medical personnel
13. Violating a condition of furlough, pass, or any other conditional or temporary release (i.e. funeral, work, etc.)
14. Leaving the Detention Facility without authorization
15. Violating any municipal, county, state, or federal law
16. Counterfeiting, forging, or reproducing without proper authorization, any document, article of identification, money, security items, or official paper
17. Acting in a way that disrupts or interferes with security or orderly running of the Detention Facility (i.e. failure to lock-down/return to bunk, not returning issued razors at change-out or at release)
18. Encouraging, facilitating, or otherwise conspiring with others to commit any prohibited act
19. Escaping, attempting to escape, or planning to escape, including failing to return from an approved work release program or community activity at a designated time.
20. Stealing
21. Damaging Detention Facility property (in excess of $50.00)
22. Attempting to intimidate or actually intimidating or controlling personnel or other individuals whether through coercion, force, or threat
23. Interfering with security operations or devices such as firearms, smoke detectors, security strips, blocking or jamming cell doors or cameras, altering or destruction of Inmate ID bracelets, etc.

D. **Penalties for Violations**

1. For minor violations, you may be verbally reprimanded if it is the opinion of the detention officer that the reprimand should prevent the infraction from happening again. Restriction of privileges may be imposed for a period up to 48 hours (two days) for a minor violation.

2. For a major violation, you may be denied any or all privileges for a period of time not to exceed 240 hours or ten days and/or be placed in disciplinary housing.

3. For any serious violation, you may be denied any or all privileges for a period not to exceed 720 hours or thirty days, placed in disciplinary housing, and receive criminal charges if applicable.

E. **Disciplinary Procedures**

When staff finds it necessary to charge you with a minor, major, or serious violation of the rules of conduct, he/she should comply with the following procedures:

1. Notification of Supervisor
2. Prepare an *Incident Report* if major or serious violation (and *Use of Force Report*, if applicable)
3. Advise you of the specific violation/charges and maximum penalties
4. Schedule a Disciplinary Hearing as soon as practicable within 7 days of the offense
5. Advise you of your right to a hearing
6. If you acknowledge that you have committed the violation as charged, the Hearing Clerk may proceed to impose the applicable penalty
7. If you deny you have committed the violation, a hearing should be scheduled as soon as practicable. You should be notified of the time and place of the hearing at least 24 hours in advance of the hearing. This will give you time to prepare for your defense
8. You may appeal the decision of the Hearing Clerk within 7 days of decision notification based upon the following:
   - (a) Procedural errors
   - (b) Submission of new evidence
   - (c) Insufficiency of a finding of evidence that proves you did not commit the prohibited act
   - (d) Prejudice or other appropriate grounds

If you are accused of violating a serious or major infraction, you may be confined to your cell or placed in disciplinary isolation pending the hearing.

F. **Hearing/Review Rules of Conduct**

You must conduct yourself in an appropriate manner during the hearing. Rules of conduct must be adhered to during the hearing/review proceedings as follows:

1. Full uniforms required, worn properly
2. No headwear allowed
3. Reasonable, civilized behavior is expected
4. Using abusive language (profanity) is a violation of Facility rules; If you use abusive language at the hearing, you will be removed and the hearing continued in your absence and you may receive additional restriction of privileges for a period of up to five days. If you attempt to intimidate or actually intimidate the hearing clerk and/or witnesses, you will be removed and the hearing continued in your absence and you may be denied any and all privileges for a period of thirty days, placed in disciplinary segregation, and/or receive additional criminal charges.

## 5. Summary

A. Nothing herein contained will prevent additional criminal and/or civil action against you.

B. Violations of rules of conduct may result in loss of privileges and other disciplinary actions.

C. In an emergency, there may be temporary modification or suspension of the rules and regulations contained in this handbook.

D. Changes, deletions, additions, or cancellations to these rules and regulations may be made as determined by the Administration of the Montgomery County Detention Facility.