IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION *

REC

2007 AUG 14

ANTHONY JAMES COWART
* Plaintiff

v

E-TEAM OFFICER C. SMITH, et al.

CASE NUMBER

2:07 CV 456 MHT
(WO)

* ENTREATY FOR COURT TO NOT ALLOW SUMMARY DISMISSAL, RULE 56 (C), F.R.Civ.P, AND ENTER DEMAND OF TRIAL BY JURY FOR PLAINTIFF RULE 38, F.R.Civ.P. *

Comes now The Plaintiff, ANTHONY JAMES COWART (herein after COWART) pro se to enter into record response to Defendants arguments and defenses subsequently praying This Honorable Court to also enter a DEMAND FOR TRIAL BY JURY dismissing all motions for SUMMARY JUDGMENT by the defendants for the following reasons:

1. Defendants fail entirely to meet criteria for SUMMARY JUDGMENT.
2. Material fact exists to show unto this Court as follows:
    A. Excessive force was employed against Plaintiff Cowart causing injury, both physical and emotional, that have since been determined to be everlasting.
    B. Defendants via counsel have opted to compel misrepresentations of the actual facts that occurred and this is shown through the "special" reports and incident reports, attached here to as exhibits.

①

NEXT →
p. 1 of 9

C. Defendants will be shown to have acted maliciously, sadistically, oppressively for the very purpose of causing harm to Plaintiff Cowart.

D. Procedural safeguards in place concerning 42 USC § 1983 are not empirical edifice to foreclose remedies due to indigent pro se plaintiffs. when authoritarian physical abuse occurs. Plaintiff Cowart meets the criteria pursuant P.L.R.A. 42 USC § 1997 (e), and states as follows:

✱ DEFENDANTS FAIL TO SUBMIT TO THIS COURT SUBSTANTIAL PRERE-QUISITES THAT ENTITLE THEM TO SUMMARY JUDGMENT, because:

1. Defendants contend via defenses:
   A. Complaint fails to state claim.
   B. Defendants did not violate Plaintiffs Constitutional Rights.
   C. Plaintiff failed to exhaust "administrative" remedies.
   D. Defendants aver they acted in accordance with previous Court rulings.
   E. Defendants aver prison regulations violated were of serious nature to allow jackel-like response of correctional staff.
   F. Immunity, qualified USCA.
   G. Immunity, official, Ala Const 1901.
   H. Plaintiff must show "casual connection" between act and violation.

✱ TO THESE ACTIVELY REDUNDANT AND MISINTERPRETED DEFENSES OFFERED BY THE COUNSEL FOR DEFENDANT PLAINTIFF CONTENDS AS FOLLOWS:

2. Plaintiff clearly states excessive force, assault and battery, and maltreatment of pre trial detainees Claims, inter alia, complaint.

②

NEXT →
p. 2 of 9

Simply showing unto this Court as follows:

I. On February 28, 2007, Plaintiff Cowart suffered physical injury due directly to the excessive force employed against Cowart by correctional staff of the Montgomery County Jail, Corporal Donald Williams, Officer Kendrick, and Officer C. Smith.

II. "Special" reports filed on 7/9/07 clearly show the following:

    A. Corporal Donald Williams sprayed mace in the face of plaintiff Exhibit __3__ attached hereto. (2 pages)

    B. Officer Kendrick shot Plaintiff Cowart in back with tazer gun.

    C. Officer Smith simultaneously shot Plaintiff Cowart in ~~the~~ head and face area with tazer gun. See Exhibits __3__, __3B__, __4__ attached hereto.

    D. Plaintiff Cowart received injury sufficient enough to travel to freeworld hospital Exhibit __3B__ attached hereto.

    E. The above stated JOINT STATEMENT is purposely reiterated on EACH AND EVERY DOCUMENT. Its impossible to for any one to see every point of view necessary for adequate determination when THE EXACT SAME ANSWER IS PUPPETTED even by those that were not at the scene. Exhibit __5__, __6__, __7__.

    F. JOINT STATEMENTS ALL PATENTLY SHOW that Plaintiff Cowart was merely insubordinate through VERBAL communication.

    G. JOINT STATEMENTS ALL SHOW THAT PLAINTIFF COWART was attacked with weapon by a jackel-like horde of correctional staff.

III. The Plaintiff has shown that Constitutional safeguards in place to protect Plaintiff were soundly breeched by the deliberate indiffence of administrators and excessive force of correctional staff;

continuation of III.

A. Plaintiff has a right to "redress grievances" per the FIRST amendment U.S.C.A. Plaintiff's ORAL GRIEVANCES were ignored by staff at the Montgomery County Jail. Written grievances have mysteriously vanished.

B. Sheriff D.T. Marshall refuses to punish the correctional staff for abusive practices and via inaction allows such. This violates Plaintiffs rights guaranteed by the 4, 8, 14 Amendments USCA, as applied to illegal siezure, cruel and unusual punishment, and equal protection of the law.

C. Administrator Gina Savage clearly refuses to punish or create policy to provide legitimate sanctions against correctional officers that use excessive force against NON VIOLENT PRETRIAL DETAINEES OR THOSE INCARSERATED AT THE MONTGOMERY COUNTY JAIL in violation of Plaintiff Cowarts 4, 8, 14 Amendment rights to be free of same. (Amends 4, 8, 14 applied as above in "B").

D. Plaintiff Cowart has an ABSOLUTE right to be free from malicious, sadistic, oppressive maltreatment that injures Cowarts person. 8, 14 USCA (as above in "B" and "C")


IV. Plaintiff Cowart communicated ORAL grievances to correctional and administrative and medical staff on numerous occassions immediately following, and thereafter, the February 08, 2007, incident subsequently filing WRITTEN grievance, concerning same, which has disappeared; next:

A. According to Rule 3-D (Jail Operations) page 12 of Montgomery County Jail Inmate Handbook (Exhibit 1 attached hereto) stating in pertinent part:

"You are entitled to VOICE any grievance to jail administration."

(4)

V. Plaintiff Cowart knows of no recent rulings by the Courts of this nation or state that allow unmerciful beatings by multiple ARMED correctional staff "securing" a non-violent inmate by use of simultaneous weapon assaults.

VI. Plaintiff shows unto this Court Exhibit <u>3B</u> listing six allegedly committed disciplinary infractions.

A. ONLY 2 (two) of these infractions are deemed serious! The "C" rating.

B. The "C" rated disciplinary is "wobbling" in definition of whether violent or non-violent episode. (BROAD. Unconstitutionally)

C. The malicious intent of the correctional staff is clearly spelled out in the multiplicity and duplicity of the citings of disciplinary infractions.

VII. Plaintiff Cowart contends defenses F. G. and H. listed on page #2 of this Traverse are of the same character and due even less difference as the administrators simply wish to "pass the buck" when it is in fact their deliberate indifference that allows vicious assaults against unarmed NON VIOLENT inmates.

## ⚓ POINTS AND AUTHORITIES IN SUPPORT OF TRAVERSE ⚓

The Plaintiff, Anthony James Cowart, respectfully submits the following POINTS AND AUTHORITIES to support dismissal of any and all motions by the defendants for Summary Judgment also supporting Plaintiffs Demand for Trial by Jury.

NEXT →
p. 5 of 9

— POINTS AND AUTHORITIES —

Plaintiff Cowart shows as follows :

1. Summary Dismissal is not appropriate as genuine issues of material fact exist in this case : (Rule 56 (c), F.R.Civ.P.)

   A. Did "EXCUSABLE" excessive force occur.?

   B. Did several weapons refuse to operate at once?

   C. Did firing TAZER toward head of victim Plaintiff occur and did the wiring disappear from view when Officer C. Smith pulled the trigger ?

   D. Did Plaintiff Cowart ever make a PHYSICAL demonstration or attack correctional staff between EACH weapon firing or beating ❀ on floor to secure ?

   E. Are jail administrators, who turn their collective heads, that allow maltreatment of prisoners excused ?

2. Summary Judgement is not appropriate in this case because defendants are not allowed judgment AS A MATTER OF LAW, Rule 56 (c) F.R.Civ.P., and pro se inmates that make significant showings of constitutional violations should be given opportunity to amend complaint under P.L.R.A. 387 F.3d 1344 (11th Cir 2004) Brown V Johnson.

3. FOURTEENTH AMENDMENT EXCESS FORCE CLAIM RELIES ... "whether or not a prison guards application of force is actionable turns on whether that force was applied in a GOOD FAITH EFFORT to maintain or restore discipline OR MALICIOUSLY OR SADISTICALLY for the very purpose of causing harm, Campell V Sikes 169 F3d 1353, 1374 - 77 (11th Cir 1999)

   A. Plaintiff shows that Exhibits 3A, 3B, 4 attached affadavits of the attacking officers.

   B. How, if Plaintiff was floored, excuse second TAZER attack.

C. CENTER MASS TARGETING DOES NOT INCLUDE HEAD AN FACE AREA. Center mass is center of mass of entire body. TORSO.

D. IT IS NOT POSSIBLE THAT WEAPONS USED AGAINST VICTIM WERE ALL FAULTY AT ONCE.

E. VIDEO FOOTAGE EXISTS OF ENTIRE INCIDENT AND WILL BE ASKED FOR DURING DISCOVERY.

F. EXHIBIT __2__ (two) WHY DO THE MEDICAL PERSONELL NOT AUTHORIZING, OR VERIFYING THE REPORT?

G. TYPED DATES ARE NOT proper verification pursuant 28 USC §1746. and should be stricken as obvious falsification of signatures.

H. REPORTS show 3 three correctional officers armed and using weapons against inmate Cowart smashed Cowart to floor and repeatedly shocked him, after pepper spray, in the head and face area after Cowart had VERBAL exchange with officer Corporal Williams.

   Officers physical conduct [force] used MUST be objectively unreasonable to state Eighth Amendment [U.S.C.A.] claim NO MATTER the officers state of mind. Plus a bad faith motive or intent to cause unnecessary suffering ... officers are allowed considerable deference in how they deal with a VIOLENT inmate (quoting Chief Judge Edmonson 11th Circuit 2005, BOZEMAN V ORUM 422 F3d 1265)

   Plaintiff Cowart proves that NON-VIOLENT episode occurred and this was met by a jackel-like attack of armed correctional staff. causing serious injury to victim plaintiff. Nothing inside the February 28, 2007, attack was "reasonable".

   After firing a "TAZER" gun long wires connect the subject target via metal barbed prongs. There is NO POSSIBLE way that officers did not know the TAZER was attached to Plaintiff Cowarts head and face before and after electrocution.

Macing, electrocution, and beating ~~and~~ an inmate that is in a compliant position is repugnant to the Constitution.

Immunity defenses do not exist if the offending party knew they were committing an unlawful act Pace V Capobianco 283 F3d 1275 (11th Cir 2002) Miller V King 384 F3d 1248 (11th Cir 2004) Farmer V Brennen 511 US 825; and resulting INACTION by Administrators is NOT EXCUSABLE and amounts to deliberate indifference Thorton V City of Montgomery 78 F Supp 1218 (M.D. Ala 1999) Merriwhether V Coughlin 879 F2d 1037, Parker V Williams 862 F2d 1471 (11th Cir 1989); or inadequacies investigating complaints Depew V City of St. Mary 787 F2d 1496 (11th Cir 1986) Saucier V Katz 533 US 194, Hope V Peltzer 536 US 730.

Non-violent inmate attacked by guards is inexcusable, shows malice, Oliver V Collins 914 F2d 56 (5th Cir 1990), Procter V Harmon 257 F3d 867 (8th Cir 2001); US V Donnelly 370 F3d 87 (1st Cir 2004) Skrtich V Thorton 280 F3d 1295 (11th Cir 2002).

Coercive action used after inmate is compliant, the situation disfused, is violative of the Constitution Williams V Burton 943 F2d 1572, 1576 (11th Cir 1990)

Plaintiff contends violence was never necessary. Plaintiff was NEVER combative even after weapons were used in sequence or simultaneously, or Plaintiff floored.

Complaint can not be dismissed in 42 USC §1983 action if Plaintiff can prove ANY set of facts that would entitle relief. Easton V Sundram 947 F2d 1011 (1991) plaintiffs case is proven through out the special reports of defendants and the incident report attached hereto fore as Exhibits.

NEXT →
p. 8 of 9

## * REQUESTED RELIEF *

Plaintiff Cowart respectfully prays this Honorable Court to NOT ALLOW SUMMARY DISMISSAL and to set this case for trial at this Courts earliest possible convienance and any other relief this Court will allow in favor of the Plaintiffs favor.

RESPECTFULLY SUBMITTED,

x _Anthony Cowart_ prose

Anthony James Cowart # 147846

KCF F-4 ; PO BOX 150

MT. MEIGS, ALABAMA  35067

* Done this the 10th day of August 2007

## * Certificate of Service and Verification *

I, x _Anthony Cowart_ , certify under penalty of perjury that the above stated facts, pages 1-9, are true and correct to the best of my ability also certifying that on this 10th day of August 2007 I x _Anthony Cowart_ , placed one copy of these facts, pages 1-9, in the care of correction officials, for U.S. mailing, properly addressed to Defendants @ HASKELL AND SLAUGHTER, PO BOX 4660, Montgomery, Alabama, 36103-4660, with appropriate postage.

+ Done this the 10th day of August 2007

Respectfully,

x _Anthony Cowart_ 147846

address above

*PLEASE SEE ATTACHED EXHIBITS 1-7.

* pursuant 28 USC §1746 oo notary services are not available to inmates immediately upon request.

⑨

· END ·
p. 9 of 9

Anthony James Cowart #14 78 46
KCF F-4; PO Box 150
MT Megs, ALABAMA 36057

Case # 3:07 CV 456 MHT.

OFFICE OF THE COURT CLERK
U.S. DISTRICT COURT
PO BOX 711
MONTGOMERY, ALABAMA
36101-0711

EXHIBIT # 1
one page.

## 3. Jail Operations

### A. Personal Property

You are not allowed to have valuable articles in your possession nor are you allowed to transfer clothing or other property to other inmates. Property found in violation will be confiscated and forfeited. Body jewelry and wigs are not allowed. At the time of booking, all property taken from you should be listed on the property inventory log.

Personal property may be released at any time during the first 72-hours of admittance. After that, property may be released on your scheduled visitation day. Excess property not picked up by family or friends within 7 days of booking will be destroyed.

You will be requested to sign your property slip at the point of booking. At the point of release, again you should sign your property slip fully acknowledging the fact that you have received all the items listed on the log. The Montgomery County Detention Facility has a $50.00 cap on its liability for any personal items. It is your responsibility to remove any personal property assessed at over $50.00 within three (3) days of admittance. Claims for lost inmate property should be filed with Detention Facility staff upon release.

### B. Money

Friends and relatives may deposit money orders (no cash or checks are accepted) in your inmate account Monday through Friday between the hours 8:00 AM–4:00 PM, excluding holidays. Money orders should be made payable to MCITF. You are not allowed to have money in your possession.

### C. Escape and Contraband

Any inmate who escapes, attempts to escape, assists another to escape, or is responsible for bringing into the Detention Facility any weapons, saws, tools, narcotic drugs, alcohol, hallucinogenic substances, or any items not approved by the Detention Facility will be prosecuted as provided by law. There will be no exceptions.

### D. Grievance

You are entitled to voice any grievance to the Jail Administration. You are encouraged to put the grievance in writing on the *Inmate Grievance Form* and place it in the mailbox located in the dayroom of your cellblock. The Administration will give prompt and fair consideration to any grievance and will take appropriate action when warranted.

DOES NOT REQUIRE GRIEVANCE TO BE WRITTEN.

### E. Food (Showing INMATE ID REQUIRED)

You will be served three meals a day at regular intervals. The food will be wholesome and nutritional. Since food is expensive, you must not waste it. The menus meet recommended dietary allowances. Alabama Administrative Code, American Correctional Association and Local Health Code Standards.

Uneaten food items should remain on your tray and be returned during pick-up. Hoarding of food items provided by the Detention Facility will not be allowed.

### F. Medical Services (Showing INMATE ID REQUIRED)

Reasonable and customary medical treatment is available to you. Limited dental treatment is also available. You may request, at your own expense, a private physician (such appointments will be made by this Facility and will be with the Detention Facility's medical plan. Otherwise, the service will be in accordance report illnesses daily through the *Inmate Request Forms*. You may refuse, in writing, health treatment and care; however, you must do so in the presence of the health care staff.

#### Medical Charges to Inmates

You will be charged a co-payment of $10.00 for all self-initiated, non-emergency medical services. However, indigent inmates will never be denied medical services.

If you are involved in an altercation that results in injury to another inmate or officer, you will be charged a medical fee for the injured inmate's or officer's medical treatment.

In the event you have no funds or only partial funds in your account, the account will be placed into a negative balance. When funds are later received, the total or remaining fees will be deducted from your account.

Upon release from the Facility, any unpaid medical fee balance will reflect a debit on your account from the date of release. If re-incarcerated, that debit will be deducted from any future funds then deposited to your account.

### G. Searches

Your cell, your bunk area, and your person will be subject to random searches for contraband.

You may be subject to unclothed searches under the following conditions:

1. Contact with persons from outside the facility
2. Re-entering secure area of facility
3. Legitimate penological concerns

-13-

REPORT# __02-28-06-001__

EXHIBIT # 2

By signing below I concur with the content of the report.

Report prepared by: _Cpl Williams_    Date: __02-28-06__

Supervisor Signature: _H. M. L. Kinshaw_    Date: __02-28-06__

By signing below I concur with the content of the report.

Responding Officers:

_Ofc. Kendrick_    Date: __02-28-06__

_Ofc. C. Smith_    Date: __02-28-06__

_Lt. McWilliamS_    Date: __02-28-06__

_Sgt. Paine_    Date: __02-28-06__

_____    Date: __02-28-06__

DATES HANDILY READY BY TYPIST. NOT PROPER VERIFICATION

By signing below I concur with the content of the report.

Medical Staff:

_____    Date: _____

_____    Date: _____

_____    Date: _____

MEDICAL STAFF REFUSED TO SIGN.

*Major Robinson*

EXHIBIT # 3
8 pages

3A

## MONTGOMERY COUNTY DETENTION FACILITY
### INCIDENT REPORT

REPORT#: 02-28-06-001                    DATE OF REPORT: 02-28-06

TIME OF REPORT: 2200 Hours          LOCATION: 4-Isolation

TYPE OF INCIDENT:   Inmate Displaying Disruptive Behavior          TIME: 1855 Hrs.

REPORTED BY:   Williams          D.          Corporal

| LAST NAME | FIRST NAME | RANK | ID# |
|---|---|---|---|

### INMATES INVOLVED IN INCIDENT

| NAME (LAST, FIRST) | RACE/ SEX | BOOKING # | CELL | WITNESS/VICTIM/OFFENDER (INDICATE ONE) |
|---|---|---|---|---|
| Cowart, Anthony | B/M | 7889 | 4I-2 | Offender |
| Woodall, Dennis | B/M | 69418 | 4I-8 | Mentioned |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

### INJURY TO VICTIM

EXTENT OF VICTIM INJURY:   (x)   MINOR   ( )   SERIOUS   ( )   FATAL

TYPE OF INJURY:   See Nurses Notes

VICTIM HOSPITALIZED:   ( )   YES   (x)   NO

IF "YES" WHAT HOSPITAL:   N/A

### MEDICAL ACTION

DESCRIBE MEDICAL ACTION:   See Nurses Notes

### DETAILS OF INCIDENT

DESCRIBE INCIDENT IN DETAIL (WHO, WHAT, WHERE, WHEN, HOW, WHY, AND ACTION TAKEN BY OFFICER)

On February 28, 2006, at approximately 1855 hours, Sergeant Garner, Corporal Williams, E-Team members Smith and Kendrick along with Officer Franklin arrived at 4-Isolation.  The staff members were there to relocate Inmate Woodall from 3-south to 4I-8, pending disciplinary charges.  Sergeant Garner entered the control booth to allow the officers entrance into the area.  Upon entering the cell area, the officers secured Inmate Woodall into his assigned cell.  At that time, Officer Smith informed Corporal Williams that Inmate Cowart, who was in the dayroom area on the phone, needed to return to his cell because his time had expired.  As the officers began to exit the cell, Corporal Williams informed Inmate Cowart that his time was up and he needed to lock down.  Inmate Cowart stated that he was talking to his children's mother due to one of them being sick.  At that time, Inmate Cowart continued to talk on the phone.  Corporal Williams again ordered Inmate Cowart to hang up the phone and lock down, to no avail.  Inmate Cowart then became verbally abusive toward Corporal Williams.  Corporal Williams issued several more orders for Inmate Cowart to lock down, to no avail.  After several seconds, Inmate Cowart stated to the party on the phone "let me get off this phone before I do something to one of these officers."

As Inmate Cowart hung up the phone, he began threatening to do bodily harm to Corporal Williams.  Officer Franklin attempted to direct Inmate Cowart toward his cell 4I-2, to no avail.  Inmate Cowart stopped and turned back toward

*COWART WAS HOSPITALIZED/OUT PATIENT SURGERY.*

)                          )

EXHIBIT #
2nd page   3

3B

(Continued from first page)    **INCIDENT REPORT# 02-28-06-001**

Corporal Williams, making verbal threats and using aggressive body gestures (raising his closed fist in a fighting posture). At that time, Corporal Williams retrieved his chemical irritant and pointed it toward Inmate Cowart. However, he did not deploy his chemical irritant. Inmate Cowart then lowered his hands but continued to make verbal threats. Inmate Cowart raised his closed fist a second time in an aggressive manner. Corporal Williams then deployed his chemical irritant striking him in the facial area. During the deployment of the chemical irritant, Inmate Cowart made an overt move by swinging around and made a sudden motion toward Corporal Williams. At that time, Officer Kendrick, who was positioned to the right and forward of Corporal Williams, deployed her X-26 taser with the probes striking Inmate Cowart in the back of his jumpsuit. There was no immediate effect from Officer Kendrick deploying her taser. Inmate Cowart, in an attempt to avoid being struck by the taser, turned and continued to move forward toward Corporal Williams. Inmate Cowart lowered his body in an attempt to avoid a direct hit. Officer Smith, who was positioned to the right of Officer Kendrick and at ready gun also, immediately deployed her taser, striking Inmate Cowart in the head. Officer Smith later reported having aimed at center mass. Inmate Cowart was immediately immobilized. Corporal Williams immediately placed Inmate Cowart in handcuffs. Inmate Cowart was escorted onto 4-I hallway and placed inside the security strip facing the wall.                    *ELECTROCUTED IN HEAD AND FACE.*

Sergeant Garner reported to 4-South control booth and spoke with Lieutenant Matthews and informed her of the situation. Upon returning to the hallway, Sergeant Garner noticed blood trickling from Inmate Cowart's head. Upon further observation, Sergeant Garner noticed the taser probes protruding from Inmate Cowart's Afro. She immediately asked Nurse Hill to check Inmate Cowart. Nurse Hill made a general observation, but made no comment or suggestion. Sergeant Garner ordered that Inmate Cowart be escorted to booking. Once in booking, Lieutenant Crenshaw, who had been made aware of the situation by Lieutenant Matthews, observed the location of the taser probes.

Due to recent prisoner transport procedure changes, Lieutenant Crenshaw contacted Major Robinson and informed her of the situation. Major Robinson ordered that the on duty nurse make an attempt to remove the probes. Nurse Hill carefully attempted to remove the probes but determined that they were embedded too deeply. Lieutenant Crenshaw contacted Major Robinson and informed her of Nurse Hill's determination. Major Robinson later called the facility and stated that Lieutenant Persky (MCSO) would be reporting to the facility. At approximately 1930 hours, Lieutenant Persky arrived at the facility. He too, observed the location of the probes and agreed that Inmate Cowart should be transported to a medical facility. Lieutenant Crenshaw contacted Major Robinson while Lieutenant Persky arranged for a patrol car to transport Inmate Cowart. At approximately 1950 hours, Deputies Lucie and Byrts arrived at the facility and transported Inmate Cowart to Baptist South ER.

Inmate Cowart will be charged with the following violations:
A-1 Acting insolent toward personnel
A-3 Using abusive language
B-6 Failing to comply with an officer's lawful order
B-16 Violating rules or regulations
C-17 Acting in a way that disrupts or interferes with security or orderly running of facility
C-22 Attempting to intimidate or actually intimidating/controlling personnel through coercion, force or threat

*Corp. William ~~does not state~~ does not state chemical irritant had no effect.*

*A - minor.*
*B - Medium.*  ⎫ *ALL ARE THE SAME CHARGES.*
*C - major.*

*EXHIBIT # 4*

Cowart stated to the person he was talking to "let me get off this phone before I do something to one of these officers".

At that time Inmate Cowart hung up the phone and began making threats to bodily harm Corporal Williams. Officer Franklin attempted to get Inmate Cowart to go to his cell <u>to no</u> *Williams incident report.* <u>avail.</u> Inmate Cowart, still displaying disruptive behavior, turned toward Corporal Williams and continued making all kinds of threats against him, using aggressive body jesters – even going so far as to make a closed fist as if he were ready to fight.

Corporal Williams pulled his chemical irritant and pointed it toward Inmate Cowart, but did not use it. Inmate Cowart continued making verbal threats and made a closed fist again. At that time Corporal Williams deployed his chemical irritant striking Inmate Cowart's <u>face.</u> <u>Inmate Cowart made a sudden motion swinging around toward Corporal Williams.</u> At that time Officer Kendrick deployed her taser with the probes striking the back of Inmate Cowart's jumpsuit having no effect on him. Inmate Cowart was bobbing and weaving and I, at gun ready, deployed my taser aiming at center mass. I did not intend for the taser to strike Inmate Cowart anywhere except center mass but because he was bobbing and weaving the probes struck towards the front of his head and were stuck in his Afro.

*Cassandra P. Smith*
Cassandra Smith

Sworn to and subscribed before me this _14_ day of _June_, 2007.

*Lisa (Hines) Cates*
Notary Public
My Commission Expires September 13, 2010

*TURNED TO FACE OFFICER AFTER sprayed directly in face by officer ( ? )*

*SHE DOES NOT STATE SHE ENGAGED THE TAZER ELECTROCUTING HEAD AND FACE AREA WHILE INMATE WAS ON FLOOR.*

EXHIBIT # 5

Corporal Williams and continued making verbal threats and using aggressive body gestures by raising his closed fist in a fighting manner.

Corporal Williams withdrew his chemical irritant but did not use it at that point. Inmate Cowart lowered his fists but continued making verbal threats. When he raised his fists in an aggressive manner again, Corporal Williams sprayed him with his chemical irritant but it had no effect. Inmate Cowart swung around making a sudden motion toward Corporal Williams. Officer Kendrick, positioned to the right of Corporal Williams, deployed her taser. Because the cartridge was bad, the prongs struck Inmate Cowart's jumpsuit and had no effect. Inmate Cowart continued to move toward Corporal Williams, bending down to avoid a direct hit from the taser. Officer Smith, positioned at ready gun to the right of Officer Kendrick, deployed her taser striking Inmate Cowart's head. He was immediately immobilized and restrained. Medical was summoned and Nurse Hill checked Inmate Cowart without comment or suggestions. Inmate Cowart was relocated to Booking and Lieutenant Crenshaw called Major Robinson and informed her of the situation.

Major Robinson ordered that an on-duty nurse attempt to remove the prongs. Nurse Hill attempted to remove the prongs but determined they were too deeply embedded. Major Robinson then ordered that Inmate Cowart be transported to a medical facility to have the prongs removed. Lieutenant Persky, Montgomery County Sheriff's Office, observed Inmate Cowart and concurred. Two deputies arrived at the detention facility and transported Inmate Cowart to Baptist South ER where the prongs were successfully removed and he was returned to the detention facility the same day without incident.

_____
Gina M. Savage

✶ GINA SAVAGE WAS NOT PRESENT AND HAS NO PERSONAL KNOWLEDGE
OF INCIDENT YET VERBATIM PARROTS INCIDENT REPORT ✶

EXHIBIT # 6

chemical irritant; however the spray had no effect. When Inmate Cowart swung around toward

Corporal Williams, E-Team Officer Jackie Kendrick, who was stationed to the right of Corporal

Williams, deployed her taser. The cartridge was bad therefore the prongs struck Inmate Cowart's

jumpsuit and had no effect. Inmate Cowart, bending down to avoid being hit with the taser,

continued to move toward Corporal Williams. E-Team Officer Cassandra Smith was positioned

to the right of Officer Kendrick. She deployed her taser, aiming at Inmate Cowart's chest.

Because he was bending down, the prongs struck his head. Medical was called and the nurse

examined him. She made no comment or recommendations concerning Inmate Cowart. He was

relocated to Booking and Lieutenant Crenshaw called me.

I instructed Lieutenant Crenshaw to call the nurse on duty to try to remove the prongs

from Inmate Cowart's head. When she was unable to remove the prongs, I ordered Inmate

Cowart be transported to the ER to have the prongs removed. Two deputies transported Inmate

Cowart to Baptist South ER where the prongs were successfully removed and he was returned to

the detention facility.

_Wanda J. Robinson_
Wanda J. Robinson

Sworn to and subscribed before me this __11__ day of __June__, 2007.

_Lena H. Cates_
Notary Public
My Commission Expires September 13, 2010

* NOT PRESENT PARROTED RESPONSE.

EXHIBIT # 1

Subject's Injuries & Location of Injuries: _____

_____

_____

_____

_____

Medical attention necessary: _____

_____

_____

_____

_____

Supplemental narrative: Cpl. Williams gave several direct orders for inmate Cowart, Anthony to lock down but to no avail. Inmate Cowart began to get very aggressive toward Cpl. Williams. Inmate Cowart, Anthony raised his fist in an Aggressive manner. Cpl. Williams deployed his chemical irritant, striking him in the face. No effect was observed.

_____

Detention Facility Supervisor notified? ☑ Yes ☐ No    Name: Lt. Crenshaw

Detention Facility Nurse notified? ☑ Yes ☐ No    Name: Nurse Hill

Deputy: Cpl. Williams    ID #: 80217    Date: 2-28-06

Supervisor: Lt. M.L. Crenshaw    ID #: 11440    Date: 2-28-06

***Note: A separate form should be filled out by each Deputy or Correction Officer involved with use of force.

A copy of this form must be forwarded to the Assistant Chief Deputy

Form #SHF-900-040

*LT CRENSHAW MADE REPORT NOT IN LINE WITH Corp. Williams testimony